JNO. P. MAYO, ADMINISTRATOR, v. EQUITABLE LIFE ASSURANCE. SOCIETY ET AL.

1. DESCENT AND DISTRIBUTION. *Domicile of decedent. Temporary residence.*

    A young, unmarried man, acting throughout in search of health and a suitable field of labor, left his parental home in Virginia, located for about a year in Tennessee, thence came to this state, under a contract of employment for one year, after the expiration of which he removed to another place in Tennessee, whence, after four months, his health failing rapidly, he returned to his home in Virginia, and, a few days afterwards, died. *Held,* that, if he ever acquired a domicile in this state, it was abandoned, and his personal estate is not distributable according to the laws of this state.

2. SAME. *Non-resident decedent. Administration in this state. Conflict of laws.*

    Accordingly, insurance on the life of such decedent in favor of his heirs, issued and payable in New York, being personal property following his domicile, passed to his administrator in Virginia, notwithstanding the policies remained until his death on deposit with his former employer in this state, who, as his administrator here, sought to collect and distribute the proceeds thereof.

FROM the chancery court of Lowndes county.

HON. T. B. GRAHAM, Chancellor.

The facts are stated in the opinion.

*Humphreys & Sykes*, for appellant.

*Wm. Baldwin*, for appellee.

No briefs on file.

WOODS, J., delivered the opinion of the court.

If the deceased ever acquired a domicile in Mississippi, he certainly lost it. He came to Mississippi to fulfill a business engagement, which, by its express terms, was to continue for a fixed period, and, at the termination of that period, he left this state, as he had come into it, in pursuit of a wider field of usefulness and larger wages. There is no satisfactory evidence that he intended to return to Columbus, Miss. The case, on all its disclosed facts, and on the inferences springing from those facts, seems to be this: The young man was moved by a twofold purpose in his engagements at Knoxville, at Columbus and at Memphis. He was hunting a suitable field for success in his profession, and he was trying, vainly, to find this field in a climate which would give him health. He remained a year, perhaps longer by a few months, in Knoxville, Tenn., diligently engaged in his professional work. He changed his field, at the end of that time, to Columbus, under a contract of employment for one year, and then, still hunting a wider theater and better compensation, he took up his chosen calling in Memphis, Tenn. Here the insidious disease that preyed upon him made such ravages upon strength and health that, after less than four months' labor in his last field, he gave up the pathetic and heroic struggle, and went home to Virginia to rest, where, four days after his arrival, he entered into his everlasting rest.

It may be doubted if the domicile of his origin was ever renounced; but, if it was, it must be held that he, in turn, abandoned the respective domiciles of choice acquired in Knoxville, in Columbus and in Memphis, and, by reverter, took up his domicile of origin again. We are constrained

to say that young Wright's domicile, at the date of his death, was not in Mississippi.

Were the policies of insurance personal property situated in this state, and their proceeds distributable under our laws? We are constrained to answer negatively. There is nothing in this case to make it exceptional, and the general rule that the *situs* of choses in action follows the person of the owner prevails. These policies are, by the terms of the contract, payable in New York; the insurer is a corporation of that state, and domiciled there; the assured, at the date of his death in Virginia, had no domicile in Mississippi. The policies of insurance were mere evidences of debt, and were not, and had never been, money employed in any business in this state. The deceased had no estate in Mississippi, and these policies were not evidences of debts that had accrued as "incident to a business conducted in this state." They were simply left in the safe of his Columbus employer on the departure of the deceased from Columbus for his untried scene of labor in Memphis. They had been deposited there, when taken out, for safe keeping, and they were merely left there for further security. *Speed* v. *Kelly*, 59 Miss., 47; *Jahier* v. *Rascoe*, 62 Miss., 699.

We would have been pleased to declare a different conclusion. The anxious purpose of the unselfish youth to provide for his younger brothers or sisters, and his labors and self-denials to accomplish his noble resolve, and the tragic result of the lofty struggle, powerfully and pathetically appeal to us, but the path of duty and the way of human sympathy lie widely apart in this pitiful case, as is often found in real life.

The decree of the chancery court must be

*Affirmed.*