ENOCHS *et al. v.* STATE *ex rel.* ROBERSON, Attorney General.

(In Banc.   Oct. 8, 1923.)

[97 South. 534.   No. 23312.]

1. TAXATION. *"Inheritance tax" not a "tax on property," but on its transmission from the dead to the living.*

    An inheritance tax is not a tax on property, but on the transmission of property from the dead to the living.

2. TAXATION. *Receipt of money admittedly due by administrators not conclusive of amount of inheritance tax.*

    Where the state tax commission has made no assessment of the property of a decedent under the provisions of chapter 109, Laws of 1918, the receipt by the state tax commission from the administrators of money admitted by the administrators to be due the state as taxes on the decedent's estate is not conclusive of the amount of the tax that is in fact due thereon.

3. TAXATION. *Legislature may provide for ascertainment of inheritance tax by court in proceedings to collect it.*

    The ascertainment of the value of a decedent's property for the purpose of determining the amount of an inheritance tax due thereon is not technically an assessment of the property, consequently it is within the power of the Legislature to provide for the ascertainment of the value thereof by a court in a proceeding to collect an inheritance tax due thereon.

4. TAXATION. *Statute authorizing court of equity to compel discovery to determine amount of inheritance tax held valid.*

    A statute conferring upon a court of equity the power to compel

a discovery of the amount and value of a decedent's estate by the executor or administrator for use by an administrative board in determining the amount of an inheritance tax due thereon is valid.

5. STATUTES. *Provision in statute that invalidity of portion thereof will not affect remainder will be observed by courts.*

A provision in a statute that the invalidity of any portion of it will not affect the remainder thereof will be observed by the courts when called on to enforce the statute.

6. TAXATION. *The effect of statutory provision as to determination of amount of inheritance tax construed.*

The provision in section 2, chapter 109, Laws of 1918, which requires that in valuing a decedent's estate for the purpose of determining the amount of the inheritance tax due thereon there shall be included therein all gains made during the settlement of the estate in reducing the intangible property to possession does not make the tax to that extent one on property, and therefore governed by the provisions of section 112 of the state Constitution of 1890.

7. TAXATION. *Requirement of Constitution as to assessment and collection of taxes inapplicable to privilege taxes.*

The implied requirement of section 135 of the state Constitution of 1890, that taxes shall be assessed by the assessor and collected by the sheriff, has no application to privilege taxes, but only to such as can only be fixed by an assessment of, and is primarily a charge against, property.

8. CONSTITUTIONAL LAW. *Taxation. Classification of property subject to inheritance tax by decedent's residence constitutional.*

The classification of property subject to an inheritance tax by the residence of the decedent does not violate the privileges and immunities provision of article 4 of the federal Constitution nor deprive any person of property without due process of law, nor deny to any person the equal protection of the law.

ANDERSON, J., dissenting.

APPEAL from chancery court of Hinds county.
HON. NILES MOSELEY, Special Chancellor.

BY THE COURT.

Suit by the state, on the relation of Frank Roberson, attorney-general, against Martha C. Enochs and others,

administrators of the estate of I. C. Enochs, deceased. From a decree overruling a demurrer to the bill, defendants appeal.    Affirmed and remanded.

The bill charges that the said executors submitted to the tax commission of the state a statement purporting to give a true and correct statement of the assets and the property of said I. C. Enochs, deceased, but that the tax commission was informed and believed said statement was incorrect in divers and sundry particulars, and especially in that the said estate was valued at only a total of five hundred seventy-seven thousand dollars, whereas in truth and in fact the complainant was informed and believed, and so charged, that the said estate was of value between two million five hundred thousand dollars and three million dollars.

The bill further charges in substance that the tax commission was convinced that the statement contained a gross undervaluation of the estate, and, acting under the law, proceeded to summon one of the defendants to come before the appraiser appointed by the commission, and give testimony on oath as to the true value of the said estate, whereupon the defendant declined and refused to appear and give testimony as ordered so to do under the authority of the said inheritance tax law; that the tax commission, being unable to procure said testimony in the manner provided by law, deemed it necessary and proceeded to file this bill for discovery, and ordered the attorney-general to so proceed, in order to discover the true amount and value of said estate; and the value of said estate is totally unknown to the complainant, and, being unable to secure the information from the defendants, in whom it alone reposes, as to the value of the said estate, discovery is prayed so that the true amount due as an inheritance tax may be ascertained by the tax commission.

It is charged that the defendants are due inheritance taxes to the state of Mississippi, but the exact amount of which is unknown to complainant, because he does not

know the exact value of the said estate. The bill prays that process issue to the defendants, asks for specific discovery, and that on final hearing a personal judgment be given against defendants for the inheritance taxes due the state upon the said estate of the deceased, I. C. Enochs.

BY THE REPORTER:

This case came up on a demurrer to the original bill, the pertinent portions of which bill are here inserted to insure a more complete understanding of the case.

After setting forth the names of the parties and other formalities the bill alleges that:

"1.   The said executors, under the laws of the state of Mississippi, were under the legal duty of submitting to the state tax commission, and of filing with the state tax commission, an inventory under oath, showing and disclosing all of the properties of said estate, real, personal, and mixed, and the full and fair cash value of the estate; also the names addresses of all persons known to be interested in such estate as beneficiaries thereof; and also within one year thereafter to file a further statement under oath, showing the gain or loss in the value of such estate during the settlement thereof, the amounts paid out from such estate for various expenses, etc., and that said executors were under duty to pay to the said state tax commission all of the inheritance taxes imposed by chapter 109, Mississippi Laws of 1918, as amended by chapter 130 of the Laws of Mississippi of 1922.

"2.   The said executors did undertake to file with the state tax commission a statement purporting to give a true and correct statement of the assets and properties of said I. C. Enochs, deceased, but the statement and inventory as filed by said defendants was and is inaccurate, imperfect, erroneous, and incomplete as hereinafter shown, . . .   said executors attempting to show that the value of said estate was five hundred seventy-seven thousand, seven hundred forty-nine dollars and fifty-four cents.

"Complainants, upon information which they believe to be true, charge that the estate of I. C. Enochs, deceased, had a full and fair cash value largely in excess of the value shown and represented by the defendant executors; . . . upon information complainants charge that said estate was worth from two and one-half to five million dollars, . . . and upon such information, charge the fact to be that the said estate owned a large equity and interest in what is known as Enochs & Flowers, Ltd., an alleged common-law trust, evidence of which is of record in the office of the chancery clerk of Pike county, Miss., and shown by the printed copy promulgated by the said I. C. Enochs and the defendants during the lifetime of said I. C. Enochs, copy of which is attached hereto as a part hereof, marked Exhibit D. Complainants charge that I. C. Enochs purposely reserved and retained unto himself and until his death the control and a beneficial interest in and use of the properties attempted to be conveyed by said trust, as shown by article 17, as well as other portions and provisions thereof. Complainants charge that the value of the properties attempted to be embraced in said declaration of trust should be considered in arriving at the net value of the estate of I. C. Enochs, deceased, for inheritance tax purposes. . . .

"3. Complainants, upon information which they believe to be true, charge that the statement and inventory, Exhibit C, was considered by the state tax commission to be an erroneous and incomplete inventory, and a gross undervaluation of the taxable property of I. C. Enochs, deceased; whereupon the state tax commission, within the time allowed by law, requested an additional inventory and statement, and requested additional information from said executors in order that the commission might correctly and lawfully assess the said estate for inheritance tax purposes, as provided by law, and to that end the commission named and appointed Hon. George Butler, Jackson, Miss., as an official appraiser, with directions to take testimony and report back to the state tax commission the

true value of the said estate; . . . to that end said appraiser called upon the executors to come before him and disclose the properties and value of said estate, and to that end said appraiser issued subpoenas to the executors and certain witnesses, requiring and commanding them to come before him at a time and place appointed, then and there to give testimony on oath as to the value of said estate; whereupon the executors declined and refused to appear and submit themselves to examination, and declined and refused to disclose the properties belonging to said estate, or the value thereof, and declined to give the appraiser any information whatsoever in reference thereto; and although the said appraiser has at various times since his appointment summoned the said defendants to appear and give testimony, the said defendants have each time wilfully and obstinately refused to appear and submit themselves to an examination, or to give testimony, or to co-operate with the appraiser in any way whatsoever. . . .

"4. Complainants furthermore charge that on May 25, 1920, the defeindants, acting by their attorneys addressed a communication to the state tax commission denying the authority of the state tax commission to assess or collect inheritance taxes from the executors of the estate of I. C. Enochs, deceased, and notwithstanding the said executors had previously filed what they claimed to be an inventory of said estate, and had paid to the state tax commission the sum of nine thousand two hundred ninety-nine dollars and fourteen cents as inheritance taxes, the said defedants demanded of the state tax commission a return of the amount so paid on the ground that the law was unconstitutional and void. Complainants here charge that the said executors did pay to the state tax commission the said sum of nine thousand two hundred ninety-nine dollars and fourteen cents, but that the said payment was on account, and not in full settlement of all the taxes due, and . . . the said receipt did not undertake or purport to be a receipt in full. . . . Under the law the state tax

commission has full authority and jurisdiction to call for additional inventories or information, and demand any additional lawful tax.

"5.  Complainants charge . . . written notice was issued and posted by registered mail to each of the defendants, notifying them of the appointment of said appraiser, and further notifying them that on the 15th day of June, A. D., 1920, in room 602 of the Merchants Bank Building, Jackson, Miss., the said appraiser would proceed to appraise the estate and property of I. C. Enochs deceased. . . . At the time and place appointed by said appraiser for inquiring into the value of the said estate . . . the said appraiser was present, ready and willing to proceed in the matter of the appraisement of said estate . . . but . . . each and all of the defendants wilfully and obstinately failed and refused to appear, or to submit themselves for examination, or to give any information whatsoever . . . George Butler, appraiser, reported to the attorney-general of the state his inability to obtain any disclosure from the defendants, or any testimony from said witnesses, and suggested to the attorney-general that he take such action under the law as to him might seem proper to force a discovery of the property and assets of said estate and collection of the taxes due. . . .

"6.  Complainants charge that under the law the defendants have paid only a small portion of the tax lawfully due.  The defendants are personally liable and the state is entitled to recover the full amount

"By the express terms of section 3, chapter 109, Laws of 1918, it is provided that the executors, administrators, or trustees are personally liable for inheritance taxes until the same are paid.  Furthermore the heir, devisee, or donee is personally liable for the tax computed upon the value of the real estate, as well as the executor, administrator, or trustee. . . .

"Complainants charge that nothing short of actual pay-
133 Miss.—8

ment of the lawful amount relieves the defendants of liability. . . .

·"Complainants charge, therefore that the state has a lien upon the property and assets of said estate for the lawful amount of taxes due.

"Complainants charge that the taxes due under this inheritance tax law are payable six months after the appointment of an executor, and if not paid within nine months from the accrual thereof, interest shall be charged and collected at the rate of eight per cent per annum from the time the tax accrues. Complainants charge that the executors were appointed, as shown by the letters testamentary, a long time prior to the filing of this suit, and that the tax should have been paid many months ago.

"Complainants furthermore and especially charge that by the provisions of chapter 130, Laws of 1922, 'Inheritance taxes are hereby declared to be a debt recoverable by action,' and this language of the statute imposes personal liability upon the defendants. By this amendment to the law the chancery court is given full jurisdiction to compel a disclosure of all assets which in any wise affect or make up the value of the estate, and full jurisdiction to make all necessary decrees, both interlocutory and final, by way of discovery, and by way of affording full relief in the premises. Complainants hereby rely upon all the provisions of said chapter 130 and invoke all the rights and remedies therein conferred, both upon the state tax commission and the attorney-general. . . .

"7. Complainants charge that the so-called Boston, or common law trust, styled Enochs & Flowers, Ltd., was executed by I. C. Enochs in his lifetime in contemplation of his death, without valuable and adequate consideration and designed to take effect at the death of the said I. C. Enochs, and for that reason the equities or beneficial interest of the said I. C. Enochs in the properties transferred by said trust constitute taxable assets in arriving at the net value of the estate of the said I. C. Enochs, deceased, and should be so considered by the court.

"Complainants charge furthermore that said instrument of writing attempted to appoint trustees, naming the said I. C. Enochs, as one of the beneficiaries, and provided for the administration of said trust after his death, and distribution of the trust estate after his death, and, therefore, the properties embraced therein should, under section 5 of the Inheritance Tax Law, be considered taxable assets in arriving at the proper amount of inheritance taxes.

"Complainants furthermore charge that the said common-law trust, Enochs & Flowers, Ltd., was executed for the express purpose of placing the said properties beyond the reach of taxation, and to make them free of inheritance taxes, state, and federal. For this reason also the interest of I. C. Enochs in Enochs & Flowers, Ltd., should be considered in arriving at the value of said estate.

"Complainants charge that I. C. Enochs, at the time of his death, owned at least forty per cent. of the shares of said Enochs & Flowers, Ltd. Furthermore under article 17 of said trust agreement said I. C. Enochs reserved unto himself, until his death, the absolute right to use the assets in any way he pleased, and therefore had a beneficial interest every day of his life in all the properties embraced in said trust agreement, and owned said interest at the time of his death. . . .

"8. Complainants charge that neither the state tax commission nor their statutory appraiser, George Butler, have been able to assess the taxes because of the wilful and obstinate refusal of the defendants to divulge or disclose the necessary information, or make the proper and adequate return. Both the state tax commission and the attorney-general, acting on behalf of the state, have the right to invoke the extraordinary powers of equity in aid of the effort or proceeding of the state tax commission to assess the taxes, and hereby expressly file this bill for that purpose, among others.

"Premises considered, complainants pray—

"1. That process issue for the defendants requiring them, and each of them to appear at Rules or the next

regular term of this court, then and there to plead, answer, or demur, to this bill.

"2. That the defendant executors in their answer be required to:

"(a) File a complete inventory of all of the assets owned by I. C. Enochs at his death. . . .

"(b) All gains made during the settlement of the estate. . . .

"(c) The amount of all claims allowed against the estate. . . .

"(d) All property real, personal, and mixed, owned by Enochs & Flowers, Ltd., at the time of the death of said I. C. Enochs. . . .

"(e) The number of shares held by I. C. Enochs in Enochs & Flowers, Ltd., at the time of his death. . . .

"(f) All bank stock owned by I. C. Enochs at the time of his death, the names of the banking institutions, number of shares, par value of the several shares, if any, and the value of all such bank stock. . . .

"(g) All jewels, gold and silver plate, and property of like character. . . .

"(h) All live stock, or undivided interest in live stock owned by I. C. Enochs at the time of his death. . . .

"(i) All bonds, United States, state, county, or municipal, owned by I. C. Enochs, deceased, at the time of his death. . . .

"(j) All policies of life insurance upon the life of I. C. Enochs, payable to his executors or his estate, if any, and the amount thereof, and whether paid.

"(k) All mortgages, trust deeds, vendor's liens, bills receivable, or other solvent credits owned by the said I. C. Enochs, deceased, at the time of his death, with a full list of the same, descriptions, and the full and fair cash value of each.

"(l) Other information within the knowledge of the defendant executors, touching the amount or value of the properties and estate of I. C. Enochs, deceased, at the time of his death.

"(m)   A copy of the returns or statement filed with the commissioner of internal revenue, the internal revenue inspector, or any other representative of the federal government, showing the value of the properties and estate of I. C. Enochs, deceased, for the purpose of assessing federal inheritance taxes, and the amount of inheritance taxes paid the federal government thus far, and a statement of any further claim on the part of the federal government, if any.

"3.   That all the defendants herein, both executors and beneficiaries, be required to produce all original books of account owned or possessed by I. C. Enochs at the time of his death shedding any light on his ownership of properties, real, personal, or mixed, including original deeds, pass books, day books, or ledgers.

"4.   That in the progress of this hearing the state tax commission be permitted to inspect all original books of account owned, used or possessed by I. C. Enochs at the time of his death, and to inspect all securities, stocks, bonds, or other thing of value usually deposited in a safety box, including pass books, or statements from banking institutions, returns to the federal government for income and inheritance tax purposes, and other documents shedding any light on the value of said estate.   .   .   .

"5.   That the state tax commission, during the progress of this proceeding, may be permitted, under the direction and supervision of the court, or as the tax commission may determine, assess the inheritance taxes due by the executors and beneficiaries of I. C. Enochs, deceased, and certify the amount thereof to this court, and when the commission has so assessed the said tax, or taxes, that then this court will grant a personal decree against the defendants for all taxes so certified to by the state tax commission as being due under said assessment, rendering such decree or decrees as may be necessary to grant to your complainants full relief in the premises, both as to the assessment and as to the decree for taxes.   .   .   .

"6.   Complainants on final hearing especially pray for

necessary personal decrees to operate as judgments at law. . . .

"Your complainants pray for general relief in the prem-ises."

*Green & Green,* for appellants.

This appeal is from the chancery court of Hinds county and involves the alleged liability for a tax assumed to be imposed by chapter 109, Laws of 1918, commonly called the "Inheritance Tax."

I. A VIOLATION BY SECTIONS ONE AND FIVE OF THE EQUALITY CLAUSE OF THE FEDERAL CONSTITUTION.

Given the express terms of the act, there is imposed under section 1 a transfer tax and under section 5 a receipt tax, and integrated into both transfer tax and receipt tax is a factor by which a rank discrimination is made in the amount of the exemption between that allowed in Mississippi and that allowed in other states.

This is a question under the federal constitution and not under the state, and by article IV, section 2, subdivision I, "The citizens of each state shall be entitled to all privileges and immunities of citizens of the several states." Thus the words of the constitution are fundamentally applicable, not to a part, not to one-half, but to all, and in *Travis* v. *Yale,* 252 U. S. 60, we have a decision directly to the point.

Of course, the terms "resident" and "citizen" are not synonymous, and in some cases, the distinction is important (*La Tourette* v. *McMaster,* 248 U. S. 465, 470, 63 L. Ed. 262, 265, 38 Sup. Ct. Rep. 160) ; but a general taxing scheme such as the one under consideration, if it discriminates against all non-residents, has the necessary effect of including in the discrimination those who are citizens of other states; and, if there be no reasonable ground for the diversity of treatment, it abridges the privileges and immunities to which such citizens are entitled. *Blake* v. *McClung,* 172 U. S. 239, 247, 176 U. S. 59, 67.

The leadng case upon the inquiry, "What are the privi-

leges and immunities of citizens in the several states?" is that of *Corfield* v. *Coryel*, 4 Wash. C. C. 380. Other decisions that demand attention are *Paul* v. *Virginia*, 8 Wall. 168; *Ward* v. *Maryland*, 12 Wall. 418; *The Slaughter House cases*, 16 Wall. 36; *Southern Railway Co.* v. *Watts*, U. S. Adv. Sheets, February 1, 203; *Cole* v. *Cummings*, 133 U. S. 107, 113, 114; *Blake* v. *McClung*, 172 U. S. 248; *Maxwell* v. *Bugby*, 250 U. S. 525-543, which case is distinguished by the supreme court itself in the *Travis case*, *supra*, upon the ground that it operated there as an occasional or accidental inequality due to circumstances personal to the taxpayer, and it likewise distinguished for the same reason, *Bank* v. *Purdy*, 231 U. S. 373, 393, 394. See also *Guy* v. *Bathmore*, 100 U. S. 434; *American Steel & Wire Co.* v. *Speed*, 192 U. S. 519; *Darnell* v. *Memphis*, 208 U. S. 113; *Royster* v. *Virginia*, 253 U. S. 412; *Schaeffer* v. *Carter*, 252 U. S. 36.

II.  THERE HAS BEEN A VIOLATION OF THE FOURTEENTH AMENDMENT TO THE FEDERAL CONSTITUTION.  See sections 1648, 1653, 1654, and 1591, of the Mississippi Code of 1906, relating to taxation.

Property that is tangible personalty belonging to a non-resident decedent is taxed, while intangible personalty, located in Mississippi, belonging to a non-resident, is not taxed.  Note *Jayne* v. *Martinez*, 104 Miss. 208; *Myers* v. *Martinez*, 95 Miss. 104; *Neblett* v. *Neblett*, 73 So. 575. *Partee* v. *Kortrecht*, 54 Miss. 69, holds ancillary administrations have been abrogated in Mississippi by our statutes. See *Carroll* v. *McPike*, 53 Miss. 569; *Speed* v. *Kelly*, 59 Miss. 51; *Jones* v. *Warren*, 70 Miss. 233; *Mayo* v. *Assurance Society*, 71 Miss. 592; *Jahier* v. *Roscie*, 62 Miss. 699; *Adams* v. *Mortgage Co.*, 82 Miss. 392; *Shannon* v. *Building & Loan Association*, 78 Miss. 973.

Now the decisions of the supreme court of the United States in a class of cases of which *Blackstone* v. *Miller*, 188 U. S. 189, is a type, are not applicable because there is not integrated into the decision here any right to claim

other than through the law of the state of Mississippi.
So in Mississippi the property is of identically the same
character and identically similarly situated, and the right
to transfer is exercised under precisely the same laws, and
yet the resident is taxed while the non-resident is ex-
empted. In short, every discriminating feature may be
eliminated and only the difference left between a resident
and a non-resident, and that is sought to be used as a
basis for such discrimination. Note *Chalker* v. *Briming-
ham, etc., R. R. Co.,* 249 U. S. 527, where, with reference
to a similar discrimination, the court said: "We can find
no adequate basis for taxing individuals according to the
location of their chief office—the classification we think
is arbitrary and unreasonable." *Insurance Co.* v. *Con-
necticut,* 185 U. S. 366; *District* v. *Brooke,* 214 U. S. 151;
*Sully* v. *American National Bank,* 178 U. S. 289; *Blake* v.
*McClung,* 172 U. S. 239; *Adams* v. *Mortgage Company,* 83
Miss. 397; *Liverpool, etc., Co.* v. *Assessors,* 181 U. S. 365,
55 L. Ed.; *Fidelity, etc., Insurance Co.* v. *Louisville,* 245
U. S. 57, 62 L. Ed. 148.

Therefore, Mississippi had assumed, and has assumed,
jurisdiction to authorize the transfer of these tangible
properties to the heirs at law, and excludes in virtue of
its power the laws of any other state from being integrated
into such transfer, and thereby having placed both trangi-
ble and intangible property upon precisely the same foot-
ing, can it now after so having done, in virtue of its theory
of law, make a distinction upon a basis· which might be
proper in another state, but is wholly improper in Mis-
sissippi. Note especially, *Railroad Co.* v. *Green,* 216 U.
S. 417, 54 L. Ed. 541; *Gulf C. & S. F. R. R. Co.* v. *Ellis,*
165 U. S. 150, 155, 165; *Ballard* v. *Mississippi Cotton Oil
Co.,* 34 So. 533; *Cotting* v. *Kansas City Stock Yards,* 183
U. S. 79; *Connerly* v. *Union Sewer Pipe Co.,* 184 U. S. 540;
*Keeney* v. *New York,* 222 U. S. 534, 56 L. Ed. 365; *Tele-
graph Co.* v. *Fuller,* 229 U. S. 324.

The fundamental discrimination between residents and
non-residents is not a predicate for a valid classification

when the same property similarly situated, passes under identically the same circumstances.  *Paul* v. *Virginia,* 8 Wall. 168; *State* v. *Insurance Commissioner,* 37 Fla. 574; *McGuire* v. *Fisher,* 32 L. Ann. 853.

So, with the utmost confidence, we submit respectfully that there is no power under the federal constitution to discriminate between tangible and intangible property passing under identically the same statute from parties who stand before the law upon exactly the same basis. See *Magoun* v. *Bank,* 170 U. S. 278; *Black* v. *State,* 113 Wis. 221; *State* v. *Switzer,* 143 Mo. 331; *State* v. *Ferris,* 53 Ohio St. 314; *Capers Estate,* 191 Pa. 1; *Campbell* v. *California,* 200 U. S. 95; *State* v. *Dalrymple,* 70 Md. 294; *Southern Railway* v. *Watts,* U. S. Adv. Sheets, February 1st, 203.

III. A VIOLATION OF THE CONSTITUTION OF THE STATE OF MISSISSIPPI.

By section 112 of the state constitution, it is expressly provided: "Taxation shall be uniform and equal throughout the state.  Property shall be taxed in proportion to its value."

By section 2 of the act in question, after taxing all real and personal property of a resident decedent, there is taxed this: "Adding thereto all gains made during the settlement of the estate in reducing the intangible personal property thereof to possession," with certain exceptions. Now this tax upon gains so thus to be incurred, ceases to be an inheritance tax and becomes a tax levied upon the property itself.  Gleason & Otis Inheritance Taxation, 2 Ed. 36.

Therefore, the question is sharply presented as to the authority of the state to tax the accretions and increment arising during the administration of personalty upon a basis other than value.  *Knowlton* v. *Moore,* 178 U. S. 47; *Thompson* v. *McLeod,* 73 So. 195; *Brown* v. *Maryland,* 12 Wheat. 444; *New York* v. *Wells,* 208 U. S. 21, 28 Sup. Ct. 193, 52 L. Ed. 373; *Brushaber* v. *Railroad Co.,* 240 U. S. 1; *Pollock* v *.Trust Co.,* 157 U. S. 558.

In short, at death the right of the intestate ceases absolutely and the right of the beneficiary attached absolutely and what then passed from the intestate to the beneficiary thereupon became *eo instanter* the property of the beneficiary, and thereafter while such property of the beneficiary, subject, nevertheless, of course, to the debts of the decedent, it appreciates in value, and such appreciation while so belonging to the beneficiary, is property and as such must be accounted.

The following are a few of the leading cases sustaining the doctrine that the growth or increase of value when realized on the sale of an investment is accretion to capital and not income as between life tenant and remainderman. *Boardman* v. *Mansfield,* 79 Conn. 634; *Carpenter* v. *Perkins,* 83 Conn. 11, 20; *Parker* v. *Johnson,* 37 N. J. Eq. 366, 368; *Outcault* v. *Appleby,* 36 N. J. Eq. 74, 78; *Matter of Gerry,* 103 N. Y. 455; *Thayer* v. *Burr,* 201 N. Y. 55, 157, 158; *Graham's Estate,* 198 Pa. St. 216; *Neel's Estate* (No. 2), 207 Pa. St. 446; *Lauman* v. *Foster,* 157 Ia. 275; *Slocum* v. *Ames,* 19 R. L. 401; *Jordan* v. *Jordan,* 192 Mass. 337; *Mercer* v. *Buchanan,* 132 Fed. 501, 508.

V. NO AUTHORITY TO RE-APPRAISE. There was a return for assessment by the executors herein, and in assessment made by the state tax commission which was paid by the executors under protest. Section 24 gives no power to re-appraise after the commission had made the assessment, but it is confined to an examination as to the correctness of the inventory returned. The provisions of section 24 are for a current assessment and not back assessment, nor does it give authority for a rehearing by the commission of the judgment wherein the appraisement has been made and the taxes thereunder paid under protest, as is the case at bar.

VI. CHAPTER 109, LAWS OF 1918, VIOLATED SECTIONS 135 AND 138 AND SECTION 112 OF THE CONSTITUTION OF 1890 CONFERRING POWER OF ASSESSMENT OF PROPERTY UPON THE STATE TAX COMMISSION. An assessment even under section 6887, Hemingway's Code, providing that the taxes

are "a debt recoverable by action," requires an assessment. *Johnston* v. *Puffer Mfg. Co.,* 71 So. 377; *Thibodeaux* v. *State,* 69 Miss. 683; *State* v. *Sdler,* 68 Miss. 487; *Buirne* v. *State,* 50 Miss. 688; *French* v. *State,* 52 Miss. 759.

Sections 135 and 138 in connection with section 112 contemplated that assessments shall be made by the constitutional assessor, and the legislature has no power, under the constitution, to substitute another official for the assessor. *French* v. *State, supra; Thibideaux* v. *State, supra,* and *Tonnella* v. *State,* 70 Miss. 710. See Welty on Taxation, section 10; *People* v. *Kalsey,* 34 Cal. 473; *People* v. *Hastings,* 29 Ind. 450; *People* v. *Sargent,* 44 Ind. 434; *Houghton* v. *Austin,* 47 Id. 646; *Richmond & Danville R. R. Co.* v. *Commissioners,* 74 N. C. 506; *R. R. Co.* v. *Commissioners,* 72 Id. 10.

*Wells, Stevens & Jones,* for the State.

The authorities, ancient and modern, are in accord in holding that our inheritance law is a product of municipal law, that the right to inherit is given, not by nature or natures law, but by statute, the product of civil government. 2 Blackstone's Commentaries, ch. 1, sec. 10.

In *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. —, 42 L. Ed. 1037, the supreme court of the United States, after tracing the history of this kind of tax, stated: "The right to dispose of property by wills has always been considered purely a creature of statute; and within legislative control." See, also, *State* v. *Ferris,* 53 Ohio So. 314, 41 N. E. 579.

In President Roosevelt's message to the sixtieth Congress he stated: "The government has the absolute right to decide as to the terms upon which a man shall receive a bequest or devise from another—A heavy progressive tax upon a large fortune is in no way such a tax upon thrift and industry as a like tax would be upon a small fortune. No advantage comes either to the country as a whole or to the individuals inheriting the money by per-

mitting the transmission in their entirety of the enormous fortunes that would be affected by such a tax."

Thomas Jefferson, in a letter to Madison, Sept. 6, 1789, among other things, said "I set out on this ground, which I suppose to be self-evident, that the earth belongs in usufruct to the living; that the dead have neither powers nor rights over it. The portion occupied by any individual ceases to be his when he himself ceases to be, and reverts to the society."

THE CONSTITUTIONALITY OF INHERITANCE TAX UNIFORM- LY HAS BEEN UPHELD IN OTHER STATES AND JURISDICTIONS.

ARKANSAS—Statute passed in 1913 and re-enacted in 1917 with additions. Upheld in *State* v. *Handlin,* 100 Ark. 175, 138 S. W. 1112; *State Treasurer* v. *Birkett,* 120 Ark. 295, 179 S. W. 491; *In Re Clarkson,* 125 Ark. 381, 188 S. W. 834.

CALIFORNIA—Inheritance Act held valid and constitu- tional in 1893. Upheld in *Estate of Wilmerding,* 117 Cal. 281, 49 Pac. 181; *Estate of Stanford,* 126 Cal. 112, 54 Pac. 259, 58 Pac. 462, 45 L. R. A. 788; *Trippet* v. *State,* 149 Cal. 521, 86 Pac. 1084, 8 L. R. A. (N. S.) 1210. The later act of 1897 was held to be constitutional, and was re-drawn and re-enacted in 1899, being upheld in *Estate of Campbell,* 143 Cal. 623, 77 Pac. 674.

COLORADO—First statute passed in 1901, and amended in 1913. A new law was enacted in 1921, and has been upheld in the following cases: *In re Inheritance Tax,* 23 Colo. 492, 48 Pac. 535; *In re Magnes Estate,* 32 Colo. 527, 77 Pac. 853; *Brown* v. *Elder,* 32 Colo. 527, 77 Pac. 853; *Walker* v. *People,* 171 Pac. 747.

CONNECTICUT—First law passed in 1889; amended in 1893, and again in 1897. Upheld in *In re Nettleton,* 76 Conn. 235; *Re Hopkins,* 77 Conn. 644; *Re Gallup,* 76 Conn. 617, 57 Atl. 669; *Re Bridgeport Trust Co.,* 77 Conn. 657, 60 Atl. 662.

GEORGIA—The following cases have held that the inheritance tax law is valid in this state: *Martin* v. *Pollock,* 144 Ga. 605, 87 S. E. 793; *Farkas* v. *Smith,* 147 Ga. 503, 94 S. E. 1016.

IDAHO—First inheritance tax law passed in 1907 and upheld in *State ex rel. Patterson* v. *Dunlap,* 28 Id. 784, 156 Pac. 1141.

ILLINOIS—Inheritance tax law held constitutional in 1895 and upheld in *Kochersperger* v. *Drake,* 167 Ill. 122, 47 N. E. 321, 41 L. R. A. 446; *Billings* v. *People,* 189 Ill. 472, 59 N. E. 798, 59 L. R. A. 807, affirmed in 188 U. S. 97; *Walker* v. *People,* 192 Ill. 106, 61 N. E. 489; *Magoun* v. *Ill. T. & S. B.,* 170 U. S. 283, 42 L. Ed. 1037; *Re Speed,* 216 Ill. 23, 74 N. E. 809, 108 Am. St. Rep. 189, affirmed 203 U. S. 553, 51 L. Ed. 314; *People* v. *Griffith,* 245 Ill. 532, 92 N. E. 313; *People* v. *Union Trust Co.,* 255 Ill. 168, 99 N. E. 377; Am. and Eng. Ann. Cas. 1913 D, 514, L. R. A. 1915 D, 450; *Northern Trust Co.* v. *Buck & Rainor,* 263 Ill. 222, 104 N. E. 1114; *Oakman* v. *Small,* 282 Ill. 360, 118 N. E. 775.

INDIANA—Statute passed in 1913 and amended first in 1915 and again in 1921. *Conway* v. *State* (Ind. App.), 120 N. E. 717; *Crittenberger* v. *State Saving & Trust Co.,* 189 Ind. 411, 127 N. E. 552.

KANSAS—Chapter 348, Laws of 1909, is held to be constitutional in *State* v. *Cline,* 91 Kan. 416, 137 Pac. 932; 50 L. R. A. (N. S.) 991; *State* v. *Mollier,* 96 Kan. 514; 152 Pac. 771; *Central Union Trust Co.* v. *State,* 202 Pac. 853.

KENTUCKY—Statute passed in 1904, and upheld in *Commonwealth* v. *Cumberland Tel. & Tel. Co.,* 146 Ky. 142; *Booth's Executor* v. *Commonwealth,* 130 Ky. 88, 113 S'. W. 61; *Leavelle, Administrator,* v. *Arnold,* 131 Ky. 426, 115 S. W. 232, and *Bosworth* v. *Batterton,* 159 Ky. 771, 169 S. W. 506.

LOUISIANA—Louisiana has always had a law of this kind.

The act of 1828 was attacked as unconstitutional and the law upheld in the case of *Re Arnoud,* 3 La. 336. The act of 1904 was upheld in the case of *Re Levy,* 115 La. 337, 39 So. 37, 8 L. R. A. (N. S.) 1180, affirmed as *Cahen* v. *Brooster,* 203 U. S. 543; *Plummer* v. *Coler,* 178 U. S. 131, 44 L. Ed. 1007; *Re Stauffer,* 119 La. 66, 43 So. 928; *Re Popp.* 146 La. 464, 83 So. 765; *Templeton* v. *Board,* 16 La. Ann. 117.

MAINE—Inheritance tax law passed in 1893 with latest enactment in chapter 187, Laws of 1921. It has been upheld in *State* v. *Hamlin,* 86 Me. 495, 30 Atl. 76.

MARYLAND—Statute passed in 1880 and upheld in the following cases: *Montague, Executor,* v. *State,* 54 Md. 481; *Tyson* v. *State,* 28 Md. 577; *State* v. *Balrymple,* 70 Md. 294; *Fisher* v. *State,* 106 Md. 104, 66 Atl. 661; *Washington County Association* v. *Estate of Mealey,* 121 Md. 275; *Wingert* v. *State,* 129 Md. 28.

MASSACHUSETTS—Statute held constitutional in 1891 and upheld in *Minot* v. *Winthrop,* 162 Mass. 113; *Knowltno* v. *Moore,* 178 U. S. 41; *Calahan* v. *Woolbridge,* 171 Mass. 595; *Crocker* v. *Shaw,* 174 Mass. 266; *Peabody* v. *Treasurer,* 215 Mass. 129; *Kingsby* v. *Chapin,* 196 Mass. 533; *Attorney-General* v. *Stone,* 209 Mass. 186; *Frothingham* v. *Shaw,* 175 Mass. 59.

MICHIGAN—Statute passed and held constitutional in 1899 in the following case: *Union Trust Co.* v. *Wayne,* Probate Judge, 125 Mich. 487. See also *In re Fox's Estate,* 154 Mich. 5, 117 N. W. 558; *Stellwagen* v. *Wayne, Probate Judge,* 130 Mich. 166, 89 N. W. 728.

MINNESOTA—Statute upheld on constitutional grounds in 1905 in *State, ex rel., Foot* v. *Brazille,* 97 Minn. 11, 106 N. W. 93; *State, ex rel. Gage* v. *Probate Court,* 112 Minn. 279, 128 N. W. 18; *State, ex rel. Graff* v. *Probate Court,* 128 Minn. 371, 150 N. W. 1094; *State, ex rel., Williams* v. *Probate Court,* 140 Minn. 342, 168 N. W. 14.

MISSOURI—Inheritance tax law held constitutional in 1899 and upheld in *State* v. *Henderson,* 160 Mo. 190, 60 S. W. 1093; *McClintock* v. *Guynotte,* 275 Mo. 298, 204 S. W. 806.   See also cases reported 143 Mo. 287, 45 S. W. 245; 160 Mo. 190, 60 S. W. 1093; 271 Mo. 359, 196 S. W. 737; 271 Mo. 529; 197 S. W. 121; 275 Mo. 298, 204 S. W. 806.

MONTANA—Statute passed in 1885, and upheld in *Gelsthorpe* v. *Fernel,* 20 Mt. 299, 39 L. R. A. 170, 51 Pac. 267; *State* v. *Pauwelyn,* 35 Mt. 431, 90 Pac. 170; *State* v. *District Court,* 45 Mt. 335; 122 Pac. 922; *Re Blachburn,* 51 Mt. 234, 152 Pac. 31.

NEVADA—Statute first passed in 1913 and upheld in *Re Williams,* 40 Nev. 241, 161 Pac. 741; L. R. A. 1917 C, 602; *Cole* v. *Nichols,* 43 Nev. 12, 177 Pac. 409, affirmed by the supreme court of the United States, 256 U. S. 222.

NEW HAMPSHIRE.—The constitutionality of the inheritance tax law was upheld in 1905 in the following cases: *Thompson, Executor,* v. *Kidder,* 74 N. H. 89, 65 Atl. 392; *Mann, Executor,* v. *Carter,* 74 N. H. 345, 68 Atl. 130; *Carter* v. *Craig,* 77 N. H. 200, 90 Atl. 598.

NEW JERSEY—The constitutionality of the acts of 1909, and 1914, upheld in *Howell* v. *Edwards,* 88 N. J. Law, 134, 96 Atl. 186.

NEW MEXICO—First Inheritance tax law passed in 1919, Re-drawn and re-enacted in 1921.   There are no reported cases construing the statute.

NEW YORK—The state of New York has had a statute of this kind for a long time and authorities are too numerous to collate, but all recent decisions seem to concede the constitutionality of the law.

NORTH CAROLINA—First inheritance tax law passed in 1847 and has been upheld in *Pullen* v. *Commissioners,* 60 N. C. 296; *Re Morris,* 138 N. C. 259, 50 S. E. 682; *Norris*

v. *Durfey,* 168 N. C. 321, 84 S. E. 687; *State* v. *Bridges,* 161 N. C. 246, 76 S. E. 827.

NORTH DAKOTA—Inheritance tax law passed first in 1903 and has been upheld as constitutional in *Strauss* v. *State,* 36 N. D. 594, 162 N. W. 908. See, also, *Moody* v. *Hagan,* 36 N. D. 471, 162 N. W. 704, L. R. A. 1918 F, 947, affirmed in *Sardernd* v. *Tax Commission of North Dakota,* 245 U. S. 633.

OHIO—The first statute was passed in 1893, and has been held constitutional in *Hagerty* v. *State,* 55 Ohio St. 613; *Humphrey* v. *State,* 70 Ohio St. 67; *State* v. *Guilbert,* 70 Ohio St. 299; *Hostetter* v. *State,* 5 Ohio, C. C. (N. S.) 337 (1904) ; *Executors of Eury,* 72 Ohio St. 448. The supreme court has held that the tax is not on property but on the privilege to succeed to property.

OKLAHOMA—Inheritance Tax Act held constitutional in 1908 in the following case: *McGannon, Administrator,* v. *State,* 33 Okla. 145, 124 Pac. 1063.

OREGON—The inheritance tax law in Oregon was first passed in 1903 and held to be constitutional in *Clark* v. *State Treasurer,* 195 Pac. 370.

PENNSYLVANIA—This was the first state to enact an inheritance tax law, same being Act No. 72 of the Laws of 1826. This law has been re-enacted from time to time, as late as 1921.

RHODE ISLAND—The statute of this state of 1916 is the one after which Mississippi has more nearly patterned her law. This statute has been upheld in *Hazard* v. *Bliss,* 113 Atl. 469.

SOUTH CAROLINA—The inheritance tax law in this state was first enacted in 1922 and sufficient time has not elapsed to give the constitutional lawyers of South Carolina a chance.

SOUTH DAKOTA—The statute has been upheld as con-

stitutional and valid in *Re McKennan Estate* (*Sherman et al.* v. *State,*) 27 S'. D. 136, 130 N. W. 33.

TENNESSEE—First inheritance tax law passed in Tennessee in 1891, and amended in 1893. This statute has been held constitutional in *State* v. *Alston,* 94 Tenn. 674, 30 S. W. 750, 28 L .R. A. 178; *English* v. *Crenshaw,* 120 Tenn. 531, 17 L. R. A. (N. S.) 753; *Crenshaw* v. *Moore,* 124 Tenn. 528, 34 L. R. A. (N. S.) 1161; *Shelton* v. *Campbell,* 109 Tenn. 690, 72 S. W. 112; *Fidelity & Deposit Co.* v. *Crenshaw,* 120 Tenn. 606, 110 S'. W. 1017; *Tate* v. *Greenlee,* 141 Tenn. 103, 207 S. W. 716.

TEXAS—The statute in Texas was first passed in 1907, and has been held constitutional in *Dodge* v. *Youngblood,* 202 S..W. 116; *Thompson* v. *Dodge,* 210 S. W. 586.

UTAH—The statute in this state was enacted in 1901 and held constitutional in *Dixon* v. *Ricketts,* 26 Utah, 215, 72 Pac. 947; *Larson* v. *Macmiller,* 189 Pac. 579.

VERMONT—This state has had an inheritance tax law for a long time, the latest enactment being in 1919. The law has been upheld as constitutional in *Re Hickok,* 78 Vt. 259, 62 Atl. 724.

VIRGINIA—The law in this state was brought forward and reenacted in 1922. It has been upheld in *Posey* v. *Commonwealth,* 96 S. E. 771.

WASHINGTON—First inheritance law passed in this state in 1901 and has been held constitutional in *State* v. *Clark,* 30 Wash. 439, 71 Pac. 20.

WEST VIRGINIA—The law in this state was passed in 1904 and re-enacted in 1921. We find no reported cases on constitutional grounds.

WISCONSIN—The law in this state was held constitutional in *Nunnemacher* v. *State,* 129 Wis. 190, 108 N. W. 627; *Beals* v. *State,* 139 Wis. 544, 121 N. W. 347; *State* v. *Pabst,*

121 N. W. 351; *Estate of Bullen,* 143 Wis. 512, 128 N. W. 109, affirmed by the supreme court of the United States, 240 U. S. 625.

WYOMING—This state adopted an inheritance tax law in 1903. The latest enactment was in 1921. There are no reported cases on constitutional grounds.

The supreme court of the United States had had occasion to review not only the acts of Congress imposing death duties or inheritance taxes from time to time, but has also been called on to review state statutes. *Knowlton* v. *Moore,* 178 U. S. 41, 44 L. Ed. 969; *Magoun* v. *Illinois Trust & Sav. Bank,* 170 U. S. 283, 42 L. Ed. 1037, 18 Sup. Ct. Rep. 594; *New York Trust Co.* v. *Eisner,* 65 L. Ed. 963, 16 A. L. R. 660; *U. S.* v. *Field,* 255 U. S. 257, 65 L. Ed. 617.

II.   Appellants are in no position to raise any federal question on the ground of any alleged infringement on the 14th Amendment or article 4, section 2, because not within the class affected by any such points. Appellants are residents. A large portion of the brief of appellants is devoted to alleged discriminations against non-residents.

No one but a non-resident can raise any question of alleged discrimination against a non-resident or invoke a decision on the ground that the privileges and immunities of "citizens" are denied. The authorities, state and federal, are in accord on this general proposition of law. 12 C. J., pages 760 to 763; *New York ex rel. Hatch* v. *Reardon,* 51 L. Ed. 415, and authorities therein referred to by Judge HOLMES; *Albany Co.* v. *Stanley,* 26 L. Ed. 1044; *Smiley* v *Kansas,* 49 L. Ed. 545; *Clark* v. *Kansas City,* 44 L. Ed. 392; *Citizens National Bank* v. *Kentucky,* 54 L. Ed. 832; *Iroquois Transportation Co.* v. *DeLaney Forge & I. Co.,* 51 L. Ed. 837; *Del Castello* v. *McConnico,* 42 L. Ed. 622; *Baker* v. *Grice,* 42 L. Ed. 748; *Railroad Co.* v. *Jackson Vinegar Co.* (Miss. case), 57 L. Ed. 193; *Grenada Lbr. Co.* v. *Mississippi,* 54 L. Ed. 826; *Ex Parte Blair,* 253 Fed. 800 (wherein Judge CLAYTON quotes to approve

*Baker* v. *Grice, supra*); *State* v. *Haskell* (Vt.), 34 L.
R. A. (N. S.) 286; *N. O. M. & C. R. Co.* v. *State,* 110 Miss.
290.

Turning now to some of the Mississippi cases we submit the rule is one in force not only by the federal supreme court but by our Mississippi court.

In *New Orleans M. & C. R. Co.* v. *State,* 110 Miss. 290, the privilege tax on railroad was challenged as unconstitutional on both state and federal grounds, but the railroad company making the attack was a domestic corporation and our court observed that "to entitle one to plead the unconstitutionality of any particular statute such party must be damaged by the alleged obnoxious provision." See also *Coleman's Lessees* v. *Carr & Walker,* 258 Miss. 118 (reprint, Book 2); *Dejarnett* v. *Haynes,* 23 Miss. 600 Miss. reprint Book 12, page 227; *Gibbs* v. *Green,* 54 Miss. 592; *Natchez & S. R. Co.* v. *Crawford,* 99 Miss. 697; *Conner* v. *Gray,* 41 So. 186.

We dispute the fact that there is any discrimination whatsoever. But for the purpose of argument, if there is any question raised by point 1 of counsel's brief, it is an argument on behalf of non-residents. We are somewhat surprised at the solicitude which learned counsel displays for non-residents of Mississippi. Reliance is had upon *Travis* v. *Yale,* 252 U. S. 60, 64 L. Ed. 460, but that case involved income tax and not an inheritance tax, and the supreme court merely held the constitutional guarantee of equal privileges and immunities could not be bartered away by retaliatory legislation, or by one state swapping favors with another.

In the case at bar the exemption of a non-resident is not made contingent upon the law of any of our neighboring states. The exemption allowed under our state inheritance law is in proportion to the values of the entire estate. No fairer proposition could be written into the law in reference to exemption. Neither can there be any criticism that the law infringes on the 14th Amendment. *Magoun* v. *Illinois Trust & Savings Bank, supra,* 42

L. Ed. 1042; *Pacific Express Co.* v. *Seibert,* 142 U. S. —, 35 L. Ed. 1035.

So it is that the argument on behalf of appellants is based upon the erroneous assumption that our state law places a higher tax or a greater burden on nonresidents that it does upon residents. Counsel has quoted from certain decisions of the supreme court of the United States to the point that a state may not levy a duty or tax "more onerous" or "any higher tax or excise than that exacted by law or such permanent residents." *Ward* v. *Maryland,* 12 Wall, 418; *Schaeffer* v. *Carter,* 252 U. S. 36, and others.

There is no showing of fact that the law places a greater burden on non-residents. But even if there were a discrimination as a matter of fact, it is within the power of the state to make reasonable classifications, and so far as inheritance taxes are concerned, to discriminate against non-residents. Any discussion of this law point is a moot question in the case at bar. We desire, however, to bring to the special attention of the court the case of *Maxwell* v. *Bugbee,* reported in 63 L. Ed. 1124, involving an attack upon the inheritance tax law of the state of New Jersey. We commend this case as a complete answer to every contention raised by counsel on constitutional grounds.

It is within the power of the state to levy an inheritance tax upon any property that has a fixed permanent *situs* in this state. This is settled by the case of *Wheeler* v. *Shomer,* 58 L. Ed. 1030.

III. THE EXEMPTION GRANTED BY OUR LAWS IS FAIR AND EQUITABLE. BOTH THE TAX AND THE EXEMPTION ARE MADE TO DEPEND UPON THE VALUE OF THE ESTATE ACTUALLY LOCATED IN MISSISSIPPI. By the express provision of our inheritance tax law the tax as against non-residents is confined to real estate and tangible personal property capable of having a *situs,* and located within this state, and especially exempts "such intangible property as money on hand, or on deposit, shares of stock, bonds, notes,

credits, and the evidence of debt." See *Bullen* v. *Wisconsin,* 60 L. Ed. 830.

IV.   THE INHERITANCE TAX LAW OF MISSISSIPPI WHETHER APPLIED TO THE TRANSMISSION OF PROPERTY BY WILL OR INTESTACY, IS NOT CONTROLLED BY CITIZENSHIP IN ITS APPLICATION TO ESTATES EITHER OF CITIZENS OF THE STATE OR OF THE UNITED STATES, RESIDENT OR NON-RESIDENT. THE DEAD ARE NEITHER "PERSONS" NOR "CITIZENS" WITHIN THE MEANING OF THE FEDERAL CONSTITUTION.   All of the questions which counsel have attempted to raise either under article 4, section 2, or the 14th Amendment, were discussed, directly involved and decided by the supreme court of the United States in *Maxwell* v. *Bugbee,* 63 L. Ed. 1124.

There is a vital distinction between citizenship and residence. They are not synonymous terms. *Robertson* v. *Cease,* 97 U. S. 646-648; *Le Tourette* v. *McMaster,* 248 U. S. 465, 63 L. Ed. 262.

State citizenship and United States citizenship are distinct and depend upon different characteristics. *Slaughter-House Cases,* 83 U. S. 36-74. The tax imposed is not a property tax but an excise tax. *Kansas City F. C. & M. R. Co.* v. *Botkin,* 240 U. S. 227.

The control which the state has over estates has already been shown by the authorities above cited. It is emphasized by the language of the court of appeals of Maryland in *State* v. *Dalrymple,* 70 Md. 294, quoted with approval by Mr. Justice BROWN in *United States* v. *Perkins,* 163 U. S. 625, and again by Mr. Justice SHIRAS in *Plummer* v. *Coles,* 178 U. S. 115.   See also *Board of Education* v. *Illinois,* 203 U. S. 553, 8 Ann. Cas. 157, affirming *In re Speeds Estate,* 216 Ill. 23, 74 N. E. 809; *Citizens Telephone Co.* v. *Fuller,* 229 U. S. 322, affirming 185 Fed. 634.

V.   Our inheritance tax law does not violate any provision of our state constitution. *State* v. *Handline,* 100

Ark. 175, 139 S. W. 1112.   See recent case of *Randolph*
v. *Craig,* 267 Fed. 993; *Forkas* v. *Smith,* 147 Ga. 563, 44
S. E. 1016; *Booth* v. *Commonwealth,* 130 Ky. 88, S. W.
61; *State* v. *Hamlin,* 86 Me. 495, Atl. 76; *Gelsthorpe* v.
*Furnell,* 20 Mont. 299, 51 Pac. 267; *Matter of Vanderbilt,*
172 N. Y. 69, 64 N. E. 782; *State* v. *Alston,* 74 Tenn. 674,
30 S. W. 750; *In re Joslyn,* 76 Vt. 88; *Beals* v. *State,* 139
Wis. 544, 121 N. W. 347; *U. S.* v. *Perkins,* 163 U. S. 625,
41 L. Ed. 287.

Gleason and Otis, on Inheritance Taxes, at pages 8-17,
second edition, have a splendid brief on this identical
point, saying: "It is obvious that the authorities are un-
animous in declaring that an inheritance tax is not and
cannot be a tax on property without violating the con-
stitutional principles of uniformity and equality.   They
also agree that such a tax is an excise or impost upon the
right of transmitting property from the dead to the liv-
ing."   On this point see *Clarksdale Insurance Agency* v.
*Cole,* 87 Miss. 637, 40 So. 228; *Coca Cola Company* v. *Skill-
man,* 91 Miss. 667, 44 So. 985.

In the cases of *Alcorn* v. *Hamer,* 38 Miss. 652; *Daly* v.
*Swope,* 47 Miss. 713; *Edwards House Co.* v. *Jackson,* 91
Miss. 429, 45 So. 14, our court ruled that section 112 had
no reference to local and special assessments.   These cases
clearly support the conclusion also that the uniformity and
equality clause has no reference to privilege tax, income
tax, inheritance tax, or any kind of tax except *ad valorem*
tax.

There is no re-appraisement.   The whole argument on
this point is based upon the erroneous assumption that the
state tax commission did in fact appraise the estate.   The
allegations of the bill admitted by the demurrer, show con-
clusively that there has been no appraisement.   If the com-
mission had obtained the information and valued the prop-
erty, or if the appraiser had gone into the questions and
appraised the estate, and made his report, then there might
be some room for counsel's argument.   But nowhere does
this law make final the valuation placed by the taxpayer.

The statute in conferring the power of assessment upon the state tax commission does not violate sections 112 of the constitution. The underlying error of this argument is the assumption that section 112 of the constitution applies to inheritance taxes. We again repeat that section 112, as ruled by our own court, refers to *ad valorem* taxation and none other. The *Thibodeaux case,* 69 Miss. 983, is not in point, because that was a suit by the revenue agent to back assess and recover alleged past due *ad valorem* taxes when there had been no assessment of the tax. The *Tonella case,* 70 Miss. 710, did hold that assessment for taxation can only be made by the officer designated by law, and that when the constitution devolves this duty upon the assessor, the legislature cannot substitute anyone. The Tonella case was a pronouncement of our court at a time when strict construction was the rule, tax paying considered a necessary evil, and back assessment something almost unlawful. Furthermore, the conclusions reached by the majority of the court in the very recent case of *Hattiesburg Grocery Company* v. *Robertson, Revenue Agent,* involving the constitutionality of our state income tax, are at variance with the view contended for by counsel on this point.

The constitutional powers of the tax collector are not affected. There is no effort here to abolish the office of county tax collector, or to interfere with his normal duties. There is no effort to rob him of any rights which he enjoyed in 1890 when the constitution was adopted.

VI. We contended before, and the court did not adversely rule, that the chancery court could entertain a bill for discovery in aid of a proceeding to tax. The state has a lawful right to change the remedy not only in actions on behalf of the state, but in action between private individuals. Generally the question as to the retroactive application of a new remedy is presented where the litigant claims that his contractual or property rights have been encroached upon by the adoption of a new remedy. In the case at bar none of the old remedies have

been taken away and no new obligations have been im-
posed upon the taxpayer, unless it be said that that por-
tion of the amendment which makes inheritance taxes
a debt not only changes the remedy but the right. Certain-
ly, that portion of the amendment giving the state the
right to discovery pertains to a remedy and does not change
the right. It imposes no new obligation and does not in
any way change the amount or nature of the tax. The
legislature appreciated the delicate situation in which
state officers are placed by attempting to rule prominent
citizens, including women, for the contempt of court.

To enforce the inheritance tax law it was expedient to
have a means of enforcing discovery or enforcing a proper
inventory. The amendment gives a remedy by way of
discovery.

There can be no question that the amendment giving the
right to discovery in aid of the proceeding to tax pertains
exclusively to the remedy and can be applied to any pend-
ing case. A new remedy may be applied without violating
any constitutional right. *Musgrove* v. *Vicksburg & Nat-
chez R. R. Co.,* 50 Miss. 677; *Lessley* v. *Phills,* 49 Miss.
790; *Delta & Pine Land Co.* v. *Adams,* 93 Miss. 340.

The sovereign state has just as much right to file a bill
for discovery as a private individual would have in a
proper case. 18 C. J. 1085. For the authorities on dis-
covery, see 1 Pomeroy's Equity Jurisprudence (4 Ed.),
par. 190, et seq.

For the general equity powers of our chancery court, see
*Woods* v. *Riley,* 72 Miss. 73. There are other decisions in
the same line collated under section 159 of our constitu-
tion.

VII. THE RIGHT TO OBTAIN A PERSONAL DECREE FOR
THE TAXES IN THE PRESENT CASE. We submit that under
the authorities in Mississippi expressly holding that when
the chancery court assumes jurisdiction of a bill for dis-
covery, it will grant full, adequate and complete relief in
the premises, that the extreme prayer of the bill in this
case was proper and the bill can be upheld even to the

extent of granting a personal decree. Neither the amend-
ment nor the bill adds one iota, to the obligation already
imposed upon the executors and beneficiaries. The prop-
erties of the estate are charged with a lien and the chan-
cery court has original jurisdiction to enforce liens as
well as to grant full relief on any bill for discovery. Fur-
theremore, the statute as originally drawn conferred juris-
diction on the chancery court. It cannot be said that we
have not followed the particular statutory procedure. We
have followed it in the only way that the tax commission
finds possible.

In this discussion we have pretermitted any reference
to our statute which confers upon the attorney-general all
the powers which that officer enjoyer at common law.
*People* v. *Miner,* 2 Lans. (N. Y.) —; *State* v. *Robinson,*
112 N. W. 269; and *Fergus* v. *Russell,* 270 Ill. 304.

*Green & Green,* for appellant, in reply.

Where a non-resident, who raised the point, would es-
cape payment of the tax by reason of the invalidity of
the law, it is not just that our citizens should be mulcted
with a tax which had no constitutional sanction when such
tax so thus to be collected was absolutely unlawful. A
void law may be disregarded by any one at any time, un-
der any circumstances, and cannot furnish a protection
to any officer who seeks to execute it, and especially not
to one who has given it effect by taking from us our prop-
erty. *McHenry* v. *State,* 91 Miss. 575; *Bridges* v. *Super-
visors,* 57 Miss. 255; *Ex Parte Burden,* 92 Miss. 46, 45
So. 1.

The rule upon this subject in other states is that where
a judgment is predicated upon an unconstitutional stat-
ute that judgment is void. *In Re Norwalk's Appeal,* 39
L. R. A. 796; *Opinion of Judges,* 30 Conn. 593; *Woolsey*
v. *Dodge et al.,* 30 Fed. Cases 606; *Sumner et al.* v. *Beeler,*
50 Ind. 342; *Louisiana State Lottery Co.* v. *Fitzpatrick,*
15 Fed. (La.) 985. See *Windsor* v. *McVey,* 93 U. S. 274;
*Ex Parte Lange,* 18 Wall. 178; *Bigelow* v. *Forrest,* 9 Wall.

339; *Bridges* v. *Supervisors*, 57 Miss. 255; *Spoors* v. *Coen,* 44 Ohio St. 502; *Strobe* v. *Downer*, 13 Wis. 11; *Lewis* v. *Smith*, 9 N. Y. 502; *Williamson* v. *Probasco*, 4 Halstead's Ch'y. 571, 6 R. C. L. 34; *Finders* v. *Bodle* (Neb.), 78 N. W. 481; *Oolitic Stone Co. of Indiana* v. *Ridge*, 91 N. E. 951.

This bill imposing this inheritance tax affirmatively appears upon its face to have been passed within the last five days of the session. There can be no doubt but that it is a revenue bill. Being a revenue bill, affirmatively upon its face, it appears not to have been passed in accordance with the provisions of the constitution. Any statute beyond the power of the legislature to pass is void.

The law is well settled by nearly one hundred adjudicated cases in the courts of last resort in thirty states, and also by the supreme court of the United States, that where a state constitution prescribes such formalities in the enactment of laws as to require a record of the yeas and nays on the legislative journals, these Journals are conclusive as against not only a printed statute published by authority of law, but also against a duly enrolled act. ALABAMA—48 Ala. 115; 54 Id. 599; 58 Id. 546; 60 Id. 361; 77 Id. 597; 82 Id. 562. ARKANSAS—19 Ark. 250; 27 Id. 366; 32 Id. 496; 33 Id. 17; 40 Id. 200; 51 Id. 559. CALIFORNIA—8 Sawyer, 238; 54 Cal. 111, 69 Id. 479. COLORADO —5 Colo. 525; 11 Id. 489; 20 Id. 279. FLORIDA—31 Fla. 291. GEORGIA—23 Ga. 566. ILLINOIS—14 Ill. 297; 17 Id. 151; 25 Id. 181; 35 Id. 121; 38 Id. 174; 43 Id. 77; 62 Id. 253; 68 Id. 160; 120 Id. 322. INDIANA—7 Ind. 683; 11 Id. 43. IOWA—60 Iowa, 543. KANSAS—15 Kans. 194; 17 Id. 62; 26 Id. 724. KENTUCKY—93 Ky. 537. LOUISIANA —44 La. Ann. 223. MARYLAND—41 Md. 446; 42 Id. 203. MICHIGAN—2 Gibbs. 287; 1 ough. 351; 2 Mich. 191; 13 Id. 481; 22 Id. 104; 55 Id. 94; 59 Id. 610; 64 Id. 446; 79 Id. 59; 80 Id. 593; 97 Id. 589. MINNESOTA—2 Minn. 330 24 Id. 78; 38 Id. 143; 45, 451. MISSOURI—Mo. 303; 71 Id. 255. NEBRASKA—4 Neb. 503; 18 Id. 236; 20 Id. 96. NEVADA—19 Nev. 391. NEW HAMPSHIRE—35 N. H. 579; 52 Id. 622. NEW YORK—8 N. Y. 317; 42 Id. 379; 54 Id.

276; 130 Id. 88; 2 Hill. 31; 4 Mill. 384; 1 Denio, 9; 2 Denio 97; 23 Wend, 134. OHIO—20 Ohio St. 1. OREGON —21 Ore. 566. PENNSYLVANIA—26 Pa. St. 446. SOUTH CAROLINA—12 S. C. 300; 13 Id. 46. TENNESSEE—6 Lea. 549; 86 Tenn. 732; 87 Id. 163; 91 Id. 596: TEXAS—81 Tex. 230; 22 Tex. Ap. 396. VIRGINIA—79 Va. 269. WEST VIR-GINIA—5 W. Va. 85. WISCONSIN—45 Wis. 543; 54 Id. 323; 90 Id. 407. WYOMING—1 Wy. 85 Id. 96. UNITED STATES—6 Wall. 499; 94 U. S. 260; 105 Id. 667.

To same purport are Black's Constitutional Law, sec-tions 31, 102; Cooley Constitutional Lim. (6th Ed.), 156, 163, 168; Smith's Const. Lim., 833; Story Const., 590; Edgwick Stat., 539, 51 Cush. Leg. Assemb., section 2211; 1 Whart. (3 Ed.), 260; 1 Greenleaf Ev., 491.

There was no necessity for the state tax commission to accept or receive the amount of tax tendered. The only authority from these officials was to take money when, if, and after a valid assessment thereof had been made. It is fundamentally settled that an exhibit controls the averments of the pleader, and here was paid "on account of the inheritance tax" of these parties this amount into the state treasury. It is not a tax until assessed—*State* v. *Allen,* 68 Miss. 487; *Thibodeaux* v. *State,* 69 Miss. 683. Being received as a "tax" of necessity the title of the state only attached after there was an assessment and it could not have been what it was received as being without the prior assessment.

THE LAW OF 1922 AMENDING THE ACT WHEREUNDER RE-LIEF IS PRAYED FLAGRANTLY VIOLATED THE CONSTITUTION. Under the law, there is no notice required to be given to the defendant, either of the making of the assessment by the tax commission or of the entry of the decree by the chancery court. This whole theory is condemned in *Delta Pine Land Co.* v. *Adams,* 93 Miss. 340.

This alleged act so scrambles executive and judicial functions as to make both absolutely unenforceable. Fur-thermore, this act changes fundamentally the nature of the obligation of the defendant so as to make it personal

before assessment and judicial after assessment to impose a personal obligation fundamentally different from that obtaining at the death of Mr. Enochs. The violation of the constitution in this respect is demonstrated in the *Delta & Pine Land Company's case, supra.*

Argued orally by *Garner W. Green* and *Marcellus Green* for appellants and *J. Morgan Stevens* for appellee.

SMITH, C. J., delivered the opinion of the court.

This is an appeal to settle the principles of the case, and is from a decree overruling a demurrer to an original bill. The bill was filed by the attorney-general at the request of the state tax commission against the administrators and the administratrix of the estate of I. C. Enochs, deceased, in order to coerce them into the filing of a correct inventory of the estate, and to obtain a decree for the inheritance tax due on the value thereof under the provisions of chapter 109, Laws of 1918. The reporter will set out so much of the original bill as may be necessary for an understanding of this opinion. This is the second appearance of the cause in this court, as will appear from *Enochs* v. *State,* 128 Miss. 361, 91 So. 20, after the decision of which the statute was amended by chapter 130, Laws of 1922, so as to confer jurisdiction of the cause on the court below.

The contentions of counsel for the appellant to which it seems necessary for us to specifically respond may be stated as follows: (1) The estate of the decedent has been assessed by the state tax commission, which assesment is conclusive, and cannot again be inquired into; (2) the taxes assessed against the estate by the commission have been paid; (3) chapter 130, Laws of 1922, by which jurisdiction of causes of the character of the one here at bar is conferred upon the chancery court is void; (4) that the statutes under which the tax here sought to be collected violate sections 63, 64, 112, and 135 of the state constitution; and (5) section 2, article 4 of, and section 1 of the Fourteenth Amendment to, the federal constitution.

In a discussion of all of the foregoing questions it must be borne in mind that the tax here sought to be collected is not on property, but on the transmission of property from the dead to the living, which the state may permit, forbid, or attach conditions thereto, at its pleasure. It is an excise and not a property tax.

1.  The bill does not allege that the state tax commission has assessed the decedent's property, but that a partial inventory thereof setting forth their estimate of its value was filed by the administrators with the tax commission.  An assessment of property for an inheritance tax must be evidenced by an order or certificate of the tax commission, and none such is here alleged to have been made.  Consequently the question of the commission's power to reassess property does not here arise.

There having been no assessment of the decedent's property the receipt by the state tax commission from the administrators of money admitted by the administrators to be due the state as taxes on the decedent's estate is not conclusive of the amount of the tax that is in fact due thereon, for that can be ascertained only by an assessment of the property.

Where the state tax commission has certified the amount of the tax and accepted payment thereof such payment is made "conclusive as to the payment of the tax to the extent of said certification," by section 29 of the statute here in question.  But as the amount of the tax due on the decedent's estate had not been certified to by the commission, the payment made thereon does not come within this provision of the statute.

3.  Two reasons seem to be assigned by counsel for appellant for the alleged invalidity of chapter 130, Laws of 1922.  First, that the legislature cannot confer on the chancery court the power to assess property for taxes. And, second, that no notice is required to be given to the defendant either of the making of the assessment by the tax commission or of the entry of the decree by the chancery court.

As hereinbefore pointed out the tax here is not on the property, the value of the property simply being one of the elements by which it is measured, so that in determining the value of the property the court is not making a technical assessment thereof, and it has never been doubted that the payment of privilege taxes can be enforced by the courts, although the fixing of the value of property is one of the elements for the determination of the amount of the tax.

We are not now called on to determine the meaning of that portion of the statute which provides that:

"The state tax commission, upon the filing of the defendant's answer giving the necessary information prayed for, or upon the finding by the chancellor from the pleadings and proof, may proceed, under the direction of the court, at once to certify the proper amount of inheritance taxes shown by said discovery to be due; and upon the written certificate of the state tax commission in any such cause the court may, and is hereby given full jurisdiction to enter a personal decree, or decrees for the taxes so found to be due, and in addition to said personal decree may declare, adjudicate and foreclose the statutory lien given by other provisions of this act on the property of the estate."

The statute is undoubtedly valid in so far as it confers power on the court to compel a discovery by the executor, administrator, or trustee of the decedent's estate, and in event the provision which requires the court to enter a decree on the certificate of the tax commission is invalid, the remainder of the statute will not be affected thereby. It will be time enough to determine the validity of that provision of the statute when a trial court shall render a decree in accordance with it.

4. It is unnecessary for us to decide whether or not the provisions of the statute, which require the state treasurer to refund inheritance taxes erroneously paid without a special appropriation therefor being made by the legislature, violates sections 63 and 64 of the state constitution, for the reason that those provisions may be

eliminated from the statute if invalid, without affecting
or destroying the remainder thereof.   This is true, not
only under the general rule governing the unconstitution-
ality of a portion of a statute which can be segregated
from the remainder, but is especially required by section
34 of the statute itself.

The alleged violation of section 112 of the state consti-
tution by the statute is based on the provision in section
2 of the statute, which requires that in valuing the estate
on which the tax is to be assessed there shall be included
therein "all gains made during the settlement of the es-
tate in reducing the intangible personal property to pos-
session," etc.   The contention is that the property of a
decedent vests in his heirs, distributees, devisees, or lega-
tees immediately on his death, and that therefore to the
extent that accretions to the property after death are in-
cluded in the value on which the tax is computed, to that
extent the tax is on property, and not on the right to
transmit and receive it.   The settlement of the estate here
contemplated is that by an administrator or executor, and
when there is any necessity for an administration of an
estate of a decedent, the property composing the estate
does not fully vest in those persons entitled to receive it,
because of the decedent's death, until the administration
has been closed.   The value of the property is one of the
elements for measuring the tax, and the inclusion therein
of the value of accretions thereto before it fully vests in
the distributees is merely a condition attached to the right
to receive it, and is in no way a tax on the property it-
self.   As the tax in none of its aspects is on property,
but on the transmission of property from the dead to the
living, section 112 of the constitution is in no way violated.

The implied requirement of section 135 of the state
constitution that taxes shall be assessed by the assessor
and collected by the sheriff, one of whose duties is to col-
lect taxes (as heretofore construed by this court), has no
application to privilege taxes, but only to such as can
only be fixed by an assessment of, and is primarily a

charge against, property. *State* v. *Adler,* 68 Miss. 487, 9
So. 645; *Thibodeaux* v. *State,* 69 Miss. 683, 13 So. 352.

The legislature may, but it need not, provide that the
amount of an inheritance tax shall be determined by the
value of the decedent's estate, and the nature of such a
tax and the power of the legislature to deal therewith is
in no way qualified by the particular standard which the
legislature adopts for ascertaining the amount of the tax.

5. The appellee's claim that sections 1 and 5 of the
statute violates article 4, section 2 of, and section 1 of the
Fourteenth Amendment to, the federal constitution, is
predicated upon the classification by the residence of the
decedent of a portion of the property therein subjected to
the tax, that is to say, on the exception therein of certain
property of nonresidents from the tax, on the granting of
an exemption from the tax to residents greater than that
granted to nonresidents, and on the difference between the
provision for ascertaining the amount of the tax due by
nonresidents, and that for ascertaining the amount due
by residents. This classification, it will be observed, is
not based on citizenship, but on residence, and embraces
all who come within it, whether citizens of this state or
of other states. Citizenship is synonymous with domicile,
but not with residence, and a person may be a resident of
one state and a citizen of another. *La Tourette* v. *McMaster,* 248 U. S. 465, 39 Sup. St. 160, 63 L. Ed. 362; *Alston*
v. *Newcomer,* 42 Miss. 186; *Morgan* v. *Nunes,* 54 Miss.
308; *Bowers* v. *Ross,* 55 Miss. 213; *Brown* v. *Crane,* 69
Miss. 678, 13 So. 855; 11 Corpus Juris, 776, and authorities
there cited.

The classification of property subject to an inheritance
tax by the residence of the decedent is substantially different from a classification thereof by the citizenship of the
decedent, and therefore does not violate the privileges and
immunities provision of article 4 of the federal constitution, nor deprive any person of property without due
process of law, nor deny to any person the equal protection of the law.

The equal protection of the laws provision of the federal constitution qualifies the power of a state to grant, withhold, or attach conditions to the passing of property from the dead to the living, to the extent only that all property similarly situated shall be dealt with alike.   Both of the last two foregoing questions were decided in accordance herewith by the supreme court of the United States in *Maxwell* v. *Bugbee,* 250 U. S. 525, 40 Sup. Ct. 2, 63 L. Ed. 1124, which case we do not understand to have been overruled but qualified by *Travis* v. *Yale & Mfg. Co.,* 252 U. S. 60, 40 Sup. Ct. 228, 64 L. Ed. 460.

Affirmed and remanded, with leave to the appellants to answer within thirty days of the filing of the mandate in the court below.

*Affirmed and remanded.*

ANDERSON, J.  I dissent in this case, because it is clear in my opinion that the statute in question is violative of that clause of the Fourteenth Amendment of the federal constitution which prohibits the states from denying to persons within their jurisdiction the equal protection of the laws.   And this results from the laws of this state which are unusual with reference to the descent and distribution of personal property.

Section 1 of the statute involved imposes a tax on the right to transfer property by will or descent.   Section 5 of the act imposes a tax upon the right of the heirs and legatees to receive the property so transferred.   By section 1 "such intangible property as money on hand or on deposit, shares of stock, bonds, notes, credits, and evidences of debts" owned by a nonresident decedent are expressly exempt from the tax, while the same character of property owned by a resident decedent is subjected to the tax.   The same discrimination is made by section 5 with reference to the right to receive the estate of a decedent by will or descent.   In order to properly understand this question it is necessary to consider in connection with the statute involved the laws of the state governing the descent and distribution of the estates of decedents.

133 Miss.—10

Under the laws of this state stocks, bonds, and choses in action are personal property, and where they have a business *situs* in this state, descend, and are administered and distributed according to the laws of this state, regardless of whether the decendent be a resident or a non-resident of the state. Section 1591, Code of 1906 (section 1358, Hemingway's Code); section 1648, Code of 1906 (section 1380, Hemingway's Code); section 1653, Code of 1906 (section 1385, Hemingway's Code); section 1654, Code of 1906 (section 1386, Hemingway's Code). *Slaughter* v. *Garland,* 40 Miss. 179; *Carroll* v. *McPike,* 53 Miss. 569; *Speed* v. *Kelly,* 59 Miss. 51; *Jones* v. *Warren,* 70 Miss. 233, 14 So. 25; *Mayo* v. *Assurance Society,* 71 Miss. 592, 15 So. 591; *Jahier* v. *Roscoe,* 62 Miss. 699, 703, 704; *Jane* v. *Martinez,* 104 Miss. 208, 61 So. 177; *Partee* v. *Kortrecht,* 54 Miss. 70; *Wilson* v. *Cox,* 49 Miss. 538; *Bolton* v. *Barnett,* 131 Miss. 802, 95 Miss. 721.

To illustrate how the statute involved would work out as to intangible property having a business *situs* in this state belonging to a nonresident and like property belonging to a resident: A nonresident dies leaving a large business located in the state, out of which there has grown money on deposit in banks in this state, stock in corporations of this state, choses in action contracted and due and payable in this state, bonds of the federal and state governments on deposit in banks here, all aggregating, say, one million dollars. A resident of the state dies, owning exactly the same character of property, of the value of one million dollars. Under our laws of descent and distribution both estates descend and are administered and distributed exactly alike; there is no difference whatever. The statute here involved taxes the estate owned by the resident, and exempts that owned by the non-resident.

It is unnecessary to cite any of the numerous decisions of the supreme court of the United States holding that although the states have a wide range of classification for the purpose of taxation, still, such a classification must

be reasonable—not arbitrary, and must rest upon some ground of real difference having a fair and substantial relation to the object of the legislation so that all persons circumstanced alike shall be treated alike. And it is deemed unnecessary to cite authorities to the effect that a classification based on residence alone may in a proper case amount to a violation of the equal protection clause of the Fourteenth Amendment. This is that character of case; for as shown, residence is the only basis for the discrimination made by this statute in favor of nonresidents against residents.

If those provisions of the statute are unconstitutional, then it seems that the whole act must go down, for they are fundamental parts of the scheme of the legislation.