E. J. JANE v. MARY J. MARTINEZ et al.

[61 South. 177.]

1. EXECUTORS AND ADMINISTRATORS. *Property of estate. Bank stock. Situs. Code 1906, section 2056. Distribution.*

Under the definition as to what are assets of the estate of a deceased person, as defined n section 2056, Code 1906, bank stock is an asset of personal property, and under the laws of this state the stock in a bank has its situs where the bank is located.

2. SAME.

Where a party residing in Alabama with his wife at the time of his death owns stock in a bank located in this state, such stock is distributable according to the laws of Mississippi, was liable to the claims of creditors of his estate, and was not exempt to his nonresident widow.

APPEAL from the chancery court of Jackson county.
HON. T. A. WOOD, Chancellor.

Suit by Mary J. Martinez and others against E. J. Jane and others. From a judgment for complainants, defendant appeals.

The facts are fully stated in the opinion of the court.

*May & Sanders* and *Ford, White & Ford,* for appellants.

The propositions which we shall undertake to maintain upon this state of facts are, broadly, these:

The bank stock was intangible, personal property which adhered to the person of the owner, and he dying testate, should be administered and disposed of under the laws of the state of his domicile.

On the first proposition we, with apologies to the court, shall begin by a short definition of the Legal Nature of Shares of Stock: ''Stock in a corporation, in the sense of a stockholder, is a species of incorporeal personal prop-

erty in the nature of a chose in action." *Cherry* v. *Frost*, 77 Tenn. 1.

"Shares of stock are incorporeal chattels." 22 Am. & Eng. Ency. of Law (2 Ed.), 751.

"Stock is defined as a proportional part of certain rights in the management and profits of the corporation during its existence, and in the assets upon its dissolution." 7 Words & Phrases, 6662.

"A share in a corporation is a right to participate in the profits or in the final distribution of the corporate property prorated." "It is in the nature of a chose in action." *Field* v. *Pierce*, 102 Mass. 253-261; *Hutchins* v. *State Bank*, 53 Mass. 421; Judge HOLMES in *Foster* v. *Patte*, 37 Mo. 524, says: "The property interest of the shareholder is an intangible and invisible thing and cannot be seized by an officer."

"A share of stock is a right which the owner has in the management of profits and ultimate assets of the corporation." *Jones* v. *C. & M. R. R. Co.*, 30 Atl. 616. See also a great number of authorities to the same general effect in 7 Words and Phrases, pp. 6472 and 6479.

Now then, the nature and character of shares of bank stock as we have seen, being intangible, personal property, the next inquiry which logically follows it: Where was the situs of the stock for purposes of administration on the death of the owner?

It is axiomatic to say that the stock, being intangible property, followed the person of the owner, and was legally presumed to be about his person in the state of Alabama when he died. The fact that the property is of an intangible nature renders it incapable of having any actual location of its own, and the law locates it upon the person of the owner. Williams on Personal Property, 191; 1 Cook on Corporations, Sec. 12; *State* v. *Kidd, Executor*, 125 Ala. 421; S. C., affirmed by Supreme Court of U. S. when on appeal to that court 188 U. S. 730; *Pleasanton* v. *Johnson*, 47 Atl. 1025; S. C., 91 Md. 673;

*Boyd* v. *City of Selma,* 96 Ala. 144; S. C., 16 L. R. A. 729; 1 Desty on Taxation, p. 329; *Seward* v. *Rising Sun City,* 79 Ind. 353; *Murray* v. *Charleston,* 96 U. S. 433.

We believe it is equally well settled that the succession of personal property is governed by the law of the state of the domicile of the owner at the time of his death, and that such is the proper place for the principal administration, and it is equally well settled that ancillary administration may be taken out wherever property of the owner may be found, these ancillary administrations being necessary to gain possession and control of property in other states for the benefit of creditors residing in such other states. But the question now before us is: Where was the bank stock for the purpose of administration? We say that it was in Mobile, Alabama, and in support of our statement of this proposition we refer the court to the following authorities: 1 Cook on Corporations, Sec. 12, p. 48; *Lowndes* v. *Cooch,* 87 Md. 478, 40 L. R. A. 380.

In the case of *Lowndes* v. *Cooch* the question dealt with and decided was: Where was the situs of certain bank stock for purposes of administration and what law would govern, whether the law of the domicile of the owner, or the law of the place where the stock was located, and the court answers the question by holding that the stock being with the owner, its disposition would be governed by the law of the place of his domicile, notwithstanding the effect of this holding caused the lapse of a legacy which would not have resulted, had the holding been otherwise. That is, had they held that the law of the place where the corporation was located, controlled, they could have upheld the legacy, which, of course, courts always prefer to do, rather than make such holding as will defeat the intention of the testator, and they lay down the rule squarely, as follows:

"The law of this state has been settled and determined to the effect that shares of stock of a corporation are personal property only and governed by the law of the

owner's domicile." And they cite *Donovan* v. *Fireman's Ins. Co.,* 30 Md. 159; *Keyser* v. *Rice,* 47 Md. 212, 28 Am. Rep. 448, and several other cases.

In the case of *Keyser* v. *Rice,* 28 Am. Rep. 448, the court sustained an injunction which was brought to restrain a creditor from attempting to subject to his demands, through the courts of West Virginia, a debt due the complainant in the injunction proceedings, by the Baltimore & Ohio Railroad Company, both parties residing in Maryland, and the debt being exempt under the laws of the state of Maryland, and that decision is cited with approval.

In a number of cases which are to be found in Vol. 16, p. 1164, Notes to American Reports, the courts almost uniformly hold that a court of equity should intervene by injunction to enjoin the doing of that in the accomplishment of which the court of equity in this case has given its assistance.

In this case the court of Mobile county, Alabama, set apart the property as exempt from debt, to be used by the widow for the purpose of maintaining herself and children for a year, and that allowance was made in pur-.suance of the exemption laws of the state of Alabama. The court of equity has aided the appellees in the accomplishment of that which is inequitable, if not indeed unlawful.

If the authorities cited are sound, it must follow that the action of the court below, in undertaking to deal with property which had been properly administered by he Alabama court, was without authority and its action should be reversed.

*H. B. Everitt,* for appellees.

The issue presented by the pleadings in this cause were the same identically as was presented by the demurrer to the bill wherein, on appeal, to test the questions of law so raised, this court in *Myers* et al. v. *Martinez,* 95 Miss. 104,

48 So. 291, on Feb. 15, 1909, fully sustained the contention of complainants that the twelve shares of bank stock was an asset having its situs in this state and subject to administration and application to the payment of debts here and that failure of the executrix to report and administer the same here and her collection of dividends and subsequent sale of the stock and appropriation of the proceeds constituted a *devestavit* for which she was liable to be proceeded against on her bond as was being done. It will be noted that the only question really at issue on the demurrer was the question of the situs of this bank stock. The bill of complaint clearly and fully disclosed the fact that decedent died in a foreign state, that he there made his will by which he not only constituted his wife sole executrix but bequeathed to her all his estate. That, having probated the will at the forum of the domicile of decedent, she also propounded it for probate and procured letters of administration here because of the existence of assets in this jurisdiction and that here creditors proved their claims and thus acquired the right to have all assets within this jurisdiction administered under the law of this state. The sole complaint then was that the corporate stock of the Merchants' & Marine Bank, a domestic corporation, had come into her hands and that she appropriated it. The demurrer admitted these facts and then squarely challenged the right of creditors here to call in question the right of this executrix and sole devisee to appropriate assets of the character so fairly and explicitly described and whose status was so clearly fixed by the statement on the face of the bill. The question then raised and decided was whether this stock in a domestic corporation of this state and in the jurisdiction of this court was assets in this jurisdiction or had its situs for administration at the domicile of the decedent. This administration drew to it no assets except such as was located here and unless, under this state of facts this stock was located here and not at the place of residence of the decedent, these complain-

ants clearly had no cause of action whatever, any more than they would have had for the failure to account for decedent's horse and buggy by this executrix, because it came to her hands at the domicile of decedent and was never in this jurisdiction. To settle this one question of law that appeal was taken and the question raised and decided. When the case is remanded the defendants answered the bill and made up the issue to be tried. That issue was the same identical question. Every material allegation of the bill is admitted and not a single issue of fact is raised. The *devestavit* and breach of the bond which is the gravamen of the action is contained in paragraph No. 8 of the bill shown on pages 5 and 6 of this record. The answer denies the technical charge of the wrongful appropriation of this stock and then fully admits the apropriation of the stock, claiming the legal title and right to appropriate same because by the express terms of the will of Johnson, title to said stock vested absolutely in her, freed of the claims of his creditors, because, being assets located not in Jackson county, Miss., but in Mobile County, Ala., it was exempt. This was plainly the same identical question raised by the demurrer and decided on appeal adversely to these defendants.

REED, J., delivered the opinion of the court.

Appellees are the four children of Charles L. Johnson. Mrs. Elizabeth D. Myers, one of the defendants to the original bill in this case, was his widow for a time and then remarried. He formerly resided in Jackson county, Miss., but at the time of his death was a resident of Mobile, Ala. He left a will, giving all of his estate to his widow and naming her as executrix. When he died, he owned twelve shares of stock in the Merchants' & Marine Bank of Scranton, Miss., of the par value of fifty dollars per share. The will was probated at Mobile. Afterwards it was probated and recorded in Jackson county, Miss., and administration was there taken out upon his estate by the executrix.

Charles L. Johnson was indebted to the appellees, his children, in various sums. Mrs. Myers, as guardian for the children, probated their claims against their deceased father's estate. Debts were proved against the estate in the total amount of seven thousand six hundred and one dollars and fifty nine cents. A large part of these were the amounts due appellees. The executrix did not inventory the bank stock as an asset in the administration of the estate in Jackson county. The stock appears to be quite valuable, and yielded the large dividends of ten per cent. per annum, and at one time after Mr. Johnson's death there was a stock dividend of one hundred per cent. declared. Thereafter Mrs. Myers sold and assigned the stock to W. C. Fitts. The appellant, E. J. Jane, was on the bond of the executrix. All these facts are substantially shown in the bill of complaint filed by appellees against Mrs. Myers, the appellant, Mr. Jane, the Merchants' & Marine Bank, and W. C. Fitts.

In the bill appellees prayed for judgment against Mrs. Myers for the full amount of the value of the stock with the dividends which she collected, claiming that this stock was an asset of the estate of Charles N. Johnson, which should have been inventoried and accounted for in the administration of the estate in Jackson county; therefore that the executrix was liable for the value of the stock and the total amount collected by her as dividends thereon and received as the purchase price from the sale thereof, together with legal interest to be charged against her, and claiming that she should be required to account for the full amount of all so received by her. Judgment was also asked against the bondsman, E. J. Jane, for the amount of the penalty of the bond given by the executrix, one thousand dollars; and judgment was also prayed against the Merchants' & Marine Bank for the amount received in the sale of the stock to W. C. Fitts, which appellees claim they wrongfully permitted.

To this bill demurrers were filed by the several parties, and therein it was asserted that the executrix, after quali-

fying in Mobile county, Ala., and becoming thereby the domiciliary representative of the estate of decedent, was accountable there, if at all, for the bank stock; also that the situs of the bank stock, for the purpose of the administration of his estate, was at the home of the owner thereof at the time of his death. In short, that the situs of the bank stock was in Mobile, Ala., where Mr. Johnson died, rather than in Jackson county, Miss., where the bank was located. From the decision of the court overruling the demurrers, the defendants appealed to this court to settle the principles of the law involved. Reference is now made to the opinion in that appeal; the case being *Elizabeth D. Myers* et al. v. *Mary J. Martinez* et al., 95 Miss. 104, 48 South. 291.

We think it will be seen by review of the report that one of the chief questions for consideration by the court in that appeal was the situs of the bank stock—whether in Alabama or Mississippi. The decision of the chancellor in overruling the demurrers filed by appellant, E. J. Jane, and Mrs. Myers was affirmed. The court decided that there was no liability on the part of the Merchants' & Marine Bank, and reversed the case and dismissed the bill as to the bank. Mayes, J., delivered the opinion of the court, said: "The bill charges that the administration of the estate, so far as it involved property within this state, was undertaken here. The bond was filed and approved in the probate court of this state, and it became the duty of the executrix to fully administer all of the property located here and pay all debts, in so far as the property would go. The debts of the complainants were incurred here and probated in the probate court of this state."

Appellant, E. J. Jane, and Mrs. Myers then filed their answer to the bill. The allegations of the bill are to a large extent admitted. They averred, however, that under the laws of the state of Alabama, where Mr. Johnson resided at the time of his death, personal property be-

longing to a decedent to the amount of one thousand dollars in value descended exempt to the widow and minor children, and that, including the bank stock, the amount of personal property left by Mr. Johnson did not exceed the sum of one thousand dollars, and that this bank stock was therefore vested in his widow and children, and that she (the widow), under his will, was entitled to take, and did take, the same free from administration and free from the payment of his debts. The answers admitted the indebtedness to appellees by their father, and admitted that the estate was indebted generally as stated.

We find, in short, that the answer really raised the same question as to the situs of the bank stock—whether in Mobile, the place of residence of Mr. Johnson when he died, or in Jackson county, Miss., the place of the location of the bank.

The record shows that the probate court of Mobile county, Ala., through the report of appraisers, recognized the bank stock as exempt property in favor of the widow and children, and not liable to the debts of the decedent.

Under the definition as to what are assets of an estate, as stated in section 2056, Code of 1906, it is clear that this bank stock was an asset of personal property belonging to the estate of Mr. Charles L. Johnson. The bank was situated in Jackson county, and, under the laws of this state, the stock in the bank had its situs where the bank was located. A certificate of stock in a bank is the evidence of ownership of an interest in the bank. Therefore the situs of the interest in the bank evidenced by the certificate must be that of the bank.

We find that in the original bill the appellees prayed that the recovery which they sought should "inure to the benefit of all the *bona fide* claims of creditors as shall be established against said estate in the manner required by law." The court, in rendering final decree, stated that jurisdiction was reserved "for the purpose and to the extent of determining the prior right to said funds when so collected or paid in, as aforesaid, between the creditors."

The chancellor decided that the failure of the executrix to report and administer the bank stock, and her appropriation of the same as her own, constituted a breach of her bond. A decree was rendered against Mrs. Myers for the full amount received by her from the bank stock, together with interest thereon at the legal rate of six per cent., and against appellant, the surety on her bond, in the sum of the penalty thereof, one thousand dollars. We believe that the chancellar was correct in his decision.

*Affirmed.*