EWING *et al. v.* WARREN *et al.*[*]

(Division B. May 24, 1926. On Suggestion of Error, Sept. 27, 1926.)

[109 So. 601. No. 25598.]

1. DESCENT AND DISTRIBUTION. *Stock in Mississippi corporation, owned by person domiciled in Minnesota at time of death, has its situs in Mississippi, and distribution is controlled by law of state (Hemingway's Code, section 1380).*

   Property consisting of shares of stock in Mississippi corporation, owned by person domiciled in Minnesota at time of death, has its *situs* in Mississippi, and distribution is controlled by Hemingway's Code, section 1380.

2. DESCENT AND DISTRIBUTION. *Shares of stock in Louisiana corporation, doing business and domesticated within Mississippi, have their situs for devolution purposes in Mississippi (Hemingway's Code, sections 4089, 4090, 4091).*

   Shares of corporate stock in Louisiana corporation, located and doing business principally in Mississippi, and domesticated under Hemingway's Code, sections 4089, 4090, 4091, have their *situs* for devolution purposes in Mississippi.

3. DESCENT AND DISTRIBUTION. *Money, deposited in bank within state, belonging to person domiciled in another state at time of death,*

*will be distributed under Mississippi law* (*Hemingway's Code, section* 1380).

Money, deposited in bank within state, belonging to estate of person domiciled in another state at time of death, will be distributed in accordance with Hemingway's Code, section 1380.

4. Executors and Administrators. *Property of person domiciled in another state at time of death, located elsewhere than in Mississippi, should be turned over by Mississippi administrator to administrator in the other state for distribution.*

Property, belonging to estate of person domiciled in another state at time of death, located elsewhere than in Mississippi, should be turned over by Mississippi administrator to administrator in such other state to be distributed in accordance with laws of that state.

5. Bankruptcy. *Conversion of property by deceased's husband, while acting as administrator and after he had been adjudged bankrupt, could not be charged against trustee's interest.*

Conversion of property by deceased's husband, while acting as administrator and after he had been adjudged bankrupt, could not be charged against interest of trustee in estate, and the trustee's interest would not be affected, except as interest would be proportionately reduced in accordance with shrinkage of estate on account of wrongful appropriation.

6. Bankruptcy. *Any balance of interest of deceased's husband paid to his trustee in bankruptcy after payment of debts held properly ordered to be turned over to satisfy money decree rendered against bankrupt for wrongful appropriation while acting as administrator.*

Where deceased's husband, while acting as administrator, wrongfully appropriated property of the estate, after having been adjudged bankrupt, any balance of his interest remaining after trustee had paid debts of bankrupt *held* properly ordered to be turned over to satisfy personal money decree rendered against bankrupt in favor of heirs of estate for wrongful appropriation.

7. Executors and Administrators. *Estate properly held liable for value of diamonds which wife agreed, on separation with husband, to give to children on their becoming of age, or in case she remarried before certain time, where she remarried before stipulated time, but failed to deliver diamonds before death.*

Where wife, after agreement on separation with husband that she would deliver certain diamonds to minor children on their becoming of age, or in case she remarried before certain time, married before expiration of time, but did not turn diamonds

over to children and kept them until her death, such contract being valid, her estate was properly held liable to children for their value.

8. EXECUTORS AND ADMINISTRATORS.

Personal decree against deceased's husband for money and value of diamonds which he wrongfully appropriated while acting as administrator *held* properly rendered.

ON SUGGESTION OF ERROR.

9. APPEAL AND ERROR. *Case having originally been argued and decided on theory of correctness of chancellor"s finding, court will decline, on suggestion of error, to consider point that finding has no support.*

Case having originally been argued, considered, and decided, on appeal as to law, on theory that chancellor's finding that foreign corporation had become domesticated was correct, court will, in its discretion, decline to consider, on suggestion of error, point then first raised that there is no basis in the record for the finding.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, p. 642, n. 22. Bankruptcy, 7CJ, p. 119, n. 84 New; p. 336, n. 97 New; Descent and Distribution, 18CJ, p. 811, n. 36. Executors and Administrators, 24CJ, p. 275, n. 35; p. 877, n. 65 New; p. 1126, n. 22.

APPEAL from chancery court of Harrison county.

HON. V. A. GRIFFITH, Chancellor.

Proceeding between Wm. L. Ewing and others and H. O. Warren and others involving a question of *situs* and distribution of certain personal property of Mrs. Ola D. Warren, deceased. From the decree, Wm. L. Ewing and others appeal. Affirmed.

*White & Ford,* for the Mississippi Administrator.

The entire case has narrowed down to the question of what property of the estate, if any, should be turned over to Miller, trustee, or to the City National Bank, administrator, in Minnesota. We contend none of it should be removed from Mississippi.

The learned lower court directed that the administrator here retain possession and distribute the property having a *situs* in Mississippi except the one-fifth interest of H. O. Warren therein should be turned over to Miller, trustee in bankruptcy. We appeal from this insofar as turning it over to the trustee is concerned. The court further directed that as to personal property in the hands of the Mississippi administrator not having a *situs* in Mississippi, that it should be turned over to the bank, the Minnesota administrator.

We submit that: (1) The lower court was in error in decreeing that the one-fifth interest of Warren in the estate of Mrs. Warren be turned over to the trustee in bankruptcy; and (2) the court was in error in decreeing that the bank, administrator, take the stocks not having a *situs* in Mississippi.

I. *As to the trustee:* It cannot be argued that Warren had any vested rights in the estate of Mrs. Warren, but only a right upon distribution of the estate, and after payment of debts of her estate, to his proportionate part. Now the decree would apply Mrs. Warren's estate to the payment of Warren's debts, prior to the payment of claims against Mrs. Warren's estate.

The point we desire to impress on the court is that the property sought to be turned over to the trustee is no property of Warren's. He is largely indebted to the estate and the estate owes him nothing. He embezzled the property of the estate to an extent larger than his interest might be on distribution and yet the court orders his one-fifth share turned over to the bankrupt court. Therefore, Mrs. Warren's estate and the property of the four children would be used in paying the debts of Warren.

The lower court ordered the property having a *situs* here turned over to the trustee at an improper time. Warren has never had any vested interest to any part of

the estate and cannot have until distribution. 3 R. C. L., p. 231.

The trustee, under this authority, could take only what the bankrupt held, and he held nothing, because his indebtedness to the estate was much larger than his share. Warren has gotten his share in the estate and more.

It is clear that the bankrupt could not maintain the suit to recover what the trustee is here trying to recover, first, because there has been no distribution; and, second, because he owes the estate. This being so, it is indispensable that it be alleged and shown by the trustee that the funds or property in his hands are insufficient to pay the debts. 3 R. C. L., p. 269; *Drew* v. *Meyers,* 17 L. R. A. (N. S.) 350 (Neb.).

The title of property in other states is not in the trustee nor the administrator, and trustee is only entitled to unpaid legacy. 5 Am. Bankruptcy Rep., 1. Until the estate is *settled* the heirs are not actually entitled to any of the personal property belonging to the estate. The heir has no title to the personal estate, but merely a right to a distributive share in the surplus after payment of debts and expenses of administration. 11 R. C. L., sec. 162.

The right of the *heir* to the *distributive share* vests immediately. 11 R. C. L., sec. 162. But only the vested interest, and he has no title to the *corpus* of stocks and bonds. *Marvin* v. *Wagner,* 77 N. W. 44. Of course the legal title is in the administrator and the equitable title in the heir.

It seems idle to present now to this court the proposition that the *situs* of the corporation is the *situs* of the share of stock and that the stock for purposes of administration is distributable according to the laws of Mississippi. The case of *Jane* v. *Martinez* settles this point.

The effect of section 1648, Code of 1906 (section 1380, Hemingway's Code), is to abolish ancillary administrations. In this state, administration of the effects here of

a deceased person, no matter where his domicile was, is independent of all other administrations, and to be conducted in all respects as if the decedent had been a citizen of this state when he died. Debts are to be paid according to the assets and any surplus is to be distributed here. All creditors, no matter where residing, nor where the debts were contracted, are entitled to prove their claims here and proceed in our courts to enforce and share in the assets here. *Carroll* v. *McPike,* 53 Miss. 569.
· The place of residence of a debtor who owes for rent of land situated in Mississippi is the *situs* of the debt for administration. *Neblett* v. *Neblett,* 112 Miss. 550; *Richardson* v. *Neblett,* 122 Miss. 723. The residence of the debtor is the *situs* for administration of a debt. *Murphy* v. *Crouse* (Cal.), 87 A. S. R. 90. *Situs* of corporation stock for administration is the domicile of the corporation. *Murphy* v. *Crouse* (Cal.), 87 A. S. R. 90.

Upon appointment of an ancillary administrator the title of all property in the state vests in the person so appointed. *Grayson* v. *Robertson* (Ala.), 82 A. S. R. 80. For the purpose of administration, the *situs* of corporate stock is the place where the corporation is organized and its principal place of business. *Grayson* v. *Robertson* (Ala.), 82 A. S. R. 80; Note to *Richardson* v. *Bush,* 115 A. S. R. 481.

A certificate of stock is merely the evidence of ownership. The *situs* of the interest which it represents for the purpose of administration must be in the state in which the corporation was organized and has its place of business. It is the *situs* of the corporation, not the domicile of the holder of the certificate, that determines. *Grayson* v. *Robertson* (Ala.), 82 A. S. R. 80; *Young* v. *Iron Co.,* 85 Tenn. 189, 4 A. S. R. 752.

The presence in the state of stock certificates is not essential in determining the *situs* of the stock. Stock certificates are mere evidence of ownership of shares— *indicia* of his interest in the earnings and profits of the company. Their seizure by execution or attachment

would not be a seizure or levy upon the stock itself without more. *Young* v. *Iron Co., supra.* In Louisiana personal property descends according to the laws of that state. *Cole* v. *Executor,* 18 Am. Dec. 241; *Bryan* v. *Moore,* 13 Am. Dec. 347. See also note to *Succession of Packwood,* 43 Am. Dec. 239.

The heir has no absolute title to realty until after administration has been concluded. 9 R. C. L. 74, and authorities there cited; also note to *Hyde* v. *Barney,* 44 Am. Dec. 338, citing *Hancock* v. *Titus,* 39 Miss. 224; *Matter of Brinson,* 55 A. S. R. 632 (N. Y.); *Lockwood* v. *U. S. Steel Corporation,* L. R. A. 1915-C 475; *Pullman Palace Car Co.* v. *Pennsylvania,* 35 U. S. (L. Ed.), 616.

It is very generally held that if a corporation organized in one state becomes in effect a domestic corporation of another state by complying with its laws for the purpose of doing business there, its stock has a *situs* in the latter state and is subject to attachment there to the same extent as stock of domestic corporations. 5 Fletcher's Cyc. Corporations, sec. 3434, p. 5630.

The *situs* of stock for the purpose of administration on the estate of its deceased owner is the state where the latter died or where the corporation is domiciled. *Ib.,* p. 5631. Certificates of stock are only evidence of ownership and not the stock itself. *Richardson* v. *Bush,* 115 A. S. R. 472.

It will be noted that some of the property listed had a *situs* in Louisiana. The property having a *situs* there descended according to the laws of that state. *Cole* v. *Egan,* 18 Am. Dec. 241; *Bryan* v. *Moore,* 13 Am. Dec. 347; See note to *Succession of Packard,* 43 Am. Dec. 239.

II. *The contract between Mr. and Mrs. Ewing.* In this country the courts as a general rule have enforced covenants of the wife as to property, provided they are based upon a sufficient consideration, are fair and equal, are reasonable in their terms, and are not the result of fraud or coercion, and the separation has actually taken

place when the agreement is entered into or immediately follows. *Bowers* v. *Hutchinson,* 62 Ark. 15, 53 S. W. 399; *McConnell* v. *McConnell* (Ark.), 33 L. R. A. (N. S.) 1074; *Pryor* v. *Pryor,* 129 A. S. R. 102; 13 R. C. L. 1360, 1362.

An agreement between husband and wife made after an actual separation and the beginning of an action against him for separation, by which in consideration of the payment by him to her of a sum certain, she released him from all liability for support and interest in his property and agreed to live separate and apart from him, is valid. *Taylor* v. *Taylor* (Ky.), Note to 60 L. R. A. 407; *Parsons* v. *Parsons.* (Ky.), 62 S. W. 719; Note to 60 L. R. A. 407.

A wife may deal with her husband, or with her trustee, in regard to her separate estate, but in either case the transaction will be watched with jealousy. There is in this case no evidence of undue influence or improper conduct on the part of either. The naked facts of the case, the release of the trustee and the binding of her estate cast a strong shade of suspicion over the transaction, but there is no proof of it, and the decree cannot be made upon suspicion alone. *James* v. *Fisk,* 9 S. & M. 151; *Simmons* v. *Thomas,* 43 Miss. 31, 5 Am. Rep. 470.

A contract between a husband and wife, in contemplation of separation, upon sufficient consideration by which the wife relinquishes all claims against her husband's estate is valid. *Wyatt* v. *Wyatt,* 81 Miss. 219.

By the laws of Indiana, the legal disabilities of married women to make contracts are abolished except as therein otherwise provided. Martindale's Am. Law Directory (1922), under title "Married Women."

We submit that in view of the fact that Warren is indebted to the estate largely in excess of his distributive share under the laws of any state, it would be grossly inequitable to apply Mrs. Warren's estate to the payment of Warren's debts. In no event could this be done until after final distribution. Ancillary administrations being abolished in Mississippi, all property in the hands

of the administrator should be administered here.  .The bank in Minnesota joined in the request for the appointment of the Mississippi administrator.

*Mize & Mize* and *W. F. Dacey,* for the Minnesota administrator.

I.  The probate court of St. Louis county, Minnesota, had jurisdiction of the estate of Ola D. Warren. *The property rights of her surviving spouse are determined by the laws of Minnesota.*  Inasmuch as the decedent was domiciled in St. Louis county, Minnesota, at the time of her death and left property therein, the probate court of St. Louis county, Minnesota, had jurisdiction to grant letters of administration.  11 R. C. L., p. 69, secs. 65 and 67.

II.  Under the Minnesota law, upon the death of his wife, Harry O. Warren, as her surviving spouse, became at least the equitable owner of one-third of the residue of her estate.   Section 7243, General Statutes 1913, as amended by Supplement of 1917; *State* v. *Probate Court,* 163 N. W. 285; *Re Fretheim's Estate,* 194 N. W. 767; *Re Hoye's Estate,* 197 N. W. (Minn.) 853.

While it may be true that a general statement of the law as to the title to personal property in an intestate's estate would be that the personal property of a decedent vests upon his death in his executor or administrator who for the time being succeeds to all the rights and responsibilities of the decedent with reference thereto, it is certain that such administrator takes only a bare legal title in trust for the payment of the debts of the decedent, and the distribution of the remainder among the next of kin in accordance with the provisions of the will or law.   130 Wis. 543, 110 N. W. 384; 152 Mass. 341, 25 N. E. 721; *Granger* v. *Harriman,* 89 Minn. 303, 94 N. W. 869; *Hawkins* v. *Behling,* 168 Ill. 214, 48 N. E. 94, 95; *Snow* v. *Young,* 109 Ala. 528, 20 So. 71. See also 4 Words and Phrases, 2nd Series, p. 1157; 221 Pa. 261,

70 Atl. 737; 11 R. C. L. at p. 154, sec. 162; 164 Wis. 131, 159 N. W. 737; *Brown* v. *Baxter,* 94 Pac. 155 at 159; *Walworth* v. *Abel,* 52 Pa. 372; *Carter* v. *Manufacturers Nat'l Bank,* 71 Me. 448; *Richardson* v. *Cole,* 61 S. W. 182.

The following Mississippi authorities are in point: *Andrews, Administrator,* v. *Brumfield,* 32 Miss. 107; *Ricks* v. *Hilliard,* 45 Miss. 359; *Richardson* v. *Neblett,* 84 So. 695 at 697. See, too, *Hyde* v. *Barney,* 44 Am. Dec. (Vt.) 335; *Blackman* v. *Baxter, Reed & Co.,* 100 N. W. 74; 2 Am. Cas. 707, 70 L. R. A. 250; *Watkins* v. *Begelow,*—N. W. 497; *Merriam* v. *Wagner,* 77 N. W. 44.

The foregoing authorities, we submit, establish the fact that under the statutes of the state of Minnesota as well as under the decided cases of many other jurisdictions, Harry O. Warren was vested at least with the equitable title to one-third of the residue of his wife's estate upon her death; that during administration the administrator, as such, holds merely a bare legal title in trust for certain purposes, and the right of said Harry O. Warren to said one-third interest is property which could be assigned or transferred inasmuch as his equitable estate vested in him upon the death of his wife; that this statutory one-third interest differs in no way from a legacy in personal property; and the equitable rights of Harry O. Warren are a real and certain interest and not a mere expectancy.

III. The rights of Warren in said estate being property rights existing in him prior to the filing of the petition in bankruptcy, his trustee by operation of law succeeds to the rights of Warren. (a) His rights are to be determined by the local law of Minnesota. See 3 Remington on Bankruptcy (3 Ed.), sec. 1180. (b) The title of the trustee vests by operation of law pursuant to the provisions of section 70(a) of the Bankruptcy Act. 3 Remington on Bankruptcy (3 Ed.), section 70(a). (c) The property rights acquired by Warren come within the case of *In re Henry May,* 5 A. B. R. 1. See

also 3 Remington on Bankruptcy (3 Ed.), section 1178, and cases cited, section 1191 and cases cited in note 13 thereto; section 1193 and cases cited in note 19. (d and e) Whatever property rights Warren acquired were as of the date of the death of Ola D. Warren, to-wit: September 20, 1923, and involuntary petition in bankruptcy was not filed until December 31, 1923. By reason of the construction placed upon the Bankruptcy Act his trustee in bankruptcy on the date of the adjudication, to-wit: January 18, 1924, became vested by operation of law with all property which Warren held prior to December 31, 1923, the date the petition in bankruptcy was filed. 3 Remington on Bankruptcy (3 Ed.), section 1201 and cases cited in note.

Thus the title vests on the trustee's appointment and qualification but reverts to the date of adjudication; the title vests by operation of law; title vests to all kinds of property that were capable of being levied on and sold by judicial process or of being transferred by any means at the time of the filing of the petition as well as certain other property; and, finally, the title that passes is that of the bankrupt and also that of creditors. *In re Pease,* 4 A. B. R. 578 (Ref. N. Y.).

By the operation of section 45(a) (2) of the act, as amended in 1910, as well as other sections of the act, the trustee is vested with the rights and remedies of creditors in addition to the title of the bankrupt which is given him by section 70 of the act. The interest of Warren under the Minnesota law was such an interest as could be levied upon or reached by judicial process on the part of a creditor of Warren's and for this other reason Warren's title or property rights therein would pass to the trustee by reason of the provisions of the bankruptcy law hereinbefore set forth.

It has been held that an undivided share of an heir in his ancestor's estate may be seized and sold under execution. *Mayo* v. *Strand,* 12 Rob. (La.) 105; *Dearmond* v. *Courteney,* 12 La. Ann. 251; *Hyde* v. *Barney,* 17 Vt.

280, 44 Am. Dec. 335; *Fryberger* v. *Berven,* 92 N. W. 1125; *McClellan* v. *Solomon,* 23 Fla. 437, 11 A. S. R. 381. In connection with the foregoing authorities cited, the following cases are of interest: *In re Whetmore,* 108 Fed. 520 at 522; *In re Stoner,* 105 Fed. 752; *McNaboe* v. *Marks et al.,* 99 N. Y. S. 960; *In re McKenna,* 137 Fed. 611; 7 C. J. 118, sec. 197; *In re McHarry,* 111 Fed. 498; *In re Twaddell,* 110 Fed. 145; *In re Wood,* 98 Fed. 872; *Loomer* v. *Loomer,* 76 Conn. 552, 57 Atl. 167; *Clark* v. *Grosh,* 142 N. Y. S. 966; *In re Mosier,* 112 Fed. 138; *Clark* v. *Fay,* 205 Mass. 228, 91 N. E. 328, 27 L. R. A. (N. S.) 454.

IV.   The lien claimed by complainants in their bill against the share of Warren in said estate cannot be sustained. *McClellan* v. *Solomon,* 23 Fla. 437, 11 A. S. R. 381, is definitely in point.

V.   The rule that the state courts are bound to follow federal courts in construing the provisions of the bankruptcy act has been well set forth in a general way in *Bernan* v. *Dahlstrom Metallic Door Co.,* 44 A. B. R. 386, 198 N. Y. App. Div. 685, 178 N. Y. S. 846. See also: *Frank as Trustee* v. *Mercantile Nat'l Bank,* 14 A. B. R. 128, 182 N. Y. 264, 74 N. E. 841; *Putnam* v. *U. S. Trust Co.,* 36 A. B. 658, 223 Mass. 199, 111 N. E. 969; *Whaley* v. *King,* 42 A. B. R. 488, 141 Tenn. 1, 206 S. W. 31.

From the foregoing authorities it seems to be well settled that whatever interest Harry O. Warren was entitled to as a distributee of his wife's estate vested in Paul A. Miller, trustee in bankruptcy, on December 31, 1923, and any acts of Warren after that date could not possibly affect the right of the trustee in bankruptcy to take his interest; and the question now arises as to what is that interest and by whom it shall be turned over to him. This necessarily brings up our first assignment of error *that the court erred in holding that any of the personal property had a situs in Mississippi except the money that was in bank in Mississippi.*

The question of the *"situs"* of stock of a corporation or of an indebtedness is one on which the authorities are divided, and one which has one construction for one purpose and another way for another purpose. For instance, it may have a *situs* in several places for the purpose of taxation; may have a *situs* in different places for the purpose of transfer on the books; and authorities on these questions throw no light on the question now before the court, to-wit: Where is the *situs* of this stock *for distribution?* See section 1380, Hemingway's Code.

This statute is in derogation of the common law, and the purposes for which it was passed must be taken into consideration in construing it. This statute had reference only to tangible property that was situated in this state and was passed when slaves were personal property for the purpose of requiring slaves who were actually located in Mississippi at the death of the owner to descend and be distributed in accordance with the laws of Mississippi rather than in accordance with the laws of the state of the domicile of the owner. This statute was never intended to cover a share of stock which has no real *situs,* but only a fictitious *situs* and in order to give it a *situs* the law fixes that of the owner as its *situs.* The strongest opinion construing this section is found in *Speed* v. *Kelly,* 59 Miss. 47. See, also, *Jahier* v. *Roscoe,* 62 Miss. 699.

One of the best discussions of *"situs* of personal property"* is given by Minor in his "Conflict of Laws" at pages 268-285; and, as laid down by Minor, an intangible piece of property, such as a certificate of stock, can have two *situses;* and for the purpose of administration, that is, to pay off the debts of the deceased in a particular state, it may have a *situs* in that state, but *for the purpose of distribution among the heirs of the deceased, its situs is that of the owner.*

Another Mississippi case in point is that of *Mayo* v. *Equitable Life Assurance Society,* 71 Miss. 591. Under section 1358, Hemingway's Code, the certificates are

personal property. Even a deed to land, that is the paper itself, is personal property. Thus our state is by statute committed to the doctrine that certificates of stock are personal property. All of these certificates were located in Minnesota, and, therefore, they could not be given a location in Mississippi by a statute attempting to fix their *situs* in Mississippi.

It is, therefore, our contention that this statute providing that personal property situated in Mississippi shall be distributed according to the laws of this state, is not applicable to intangible property such as the ownership of stock in a corporation. And if it was intended to cover an intangible thing, then the best-reasoned authorities are to the effect that the *situs* is wherever the certificates are located. The case of *Re Estate of Alfred I. Miller, Deceased,* L. R. A. 1915-D 856, holds squarely to the point that the *situs* of shares of stock in a Kansas corporation owned by one who was a resident of another state at the time of his death, for the purposes of administration, is at the domicile of the decedent rather than in the state where the corporation is organized and has its place of business. 2 Cook's Corporation (7 Ed.), sec. 363. To the same effect is the recent case of *Klein* v. *Wilson & Co.,* 7 Ad. Fed. 769.

The cases cited by counsel on the other side are not applicable for this reason: A great number of states make a distinction between *situs* for the purpose of administration and *situs* for the purpose of distribution, some states holding that the *situs* for the purpose of administration is the domicile of the corporation, but by saying "*situs* for administration" they mean for the purpose of appointing an administrator in that state for paying off the debts of the deceased in that state and then remitting the balance to the domicile of the deceased for the purpose of distribution in accordance with the laws of that state.

The Mississippi cases cited by counsel on the other side do not support their contention under the facts of this

case or if they do they are in direct conflict with the case of *Speed* v. *Kelly, supra,* which is a better reasoned case and which was not cited in *Myers* v. *Martinez,* 95 Miss. 104, or the subsequent report of that case in 104 Miss. 208; and upon examination of the briefs in said case it will be seen that the case of *Speed* v. *Kelly,* was not referred to.

VI.    The second assignment of error is that the court erred in holding that the complainants, William L. Ewing and Nathaniel D. Ewing, were entitled to a judgment of five thousand dollars against the estate of Mrs. Ola D. Warren for the value of the "Ewing diamonds" and that the administrator, E. L. Ducate, should pay same.   This was error (1) because it was never shown that Mrs. Warren converted any diamonds of the said complainants; (2)    because the contract on which it was attempted to be shown that complainants were entitled to said diamonds was void because contrary to public policy and because there was no consideration for the agreement betwen Mrs. Ola D. Ewing to agree to place the diamonds in a bank in Vincennes, Indiana, for the complainants; and (3) because no value of the diamonds was shown by competent evidence.

VII.    The court also erred in holding *that any property turned over to Paul A. Miller, trustee in bankruptcy, and remaining after the payments of the debts proved in the court of bankruptcy against Harry O. Warren should be returned by him to the administrator in the state of Mississippi, and impressing a lien on said property for that purpose.*
This was beyond the power of the court here to do, because whatever property in this case the trustee in bankruptcy is entitled to receive, he is entitled to receive and to distribute under the orders and decrees of the court of bankruptcy; and any claims that any administrator or any other person or the complainants might have against Harry O. Warren would have to be

filed and proved in bankruptcy in the court having juris-
diction of said bankruptcy matter; and therefore the
court went beyond its power in adjudging that the prop-
erty turned over to the trustee in bankruptcy should be
turned over to him subject to any overplus after satis-
faction of the orders of the bankrupt court being re-
turned to the Mississippi administrator.

The ends of justice would best be subserved by direct-
ing the administrator here to pay off the debts in Missis-
sippi and turn the balance over to the administrator in
Minnesota for the purpose of paying off any debts in
Minnesota, finally winding up the estate by making dis-
tribution in that state.

*White & Ford,* in reply, for Mississippi administrator.

Counsel seemingly concede that there is only one
proposition in the case; to-wit, the *situs* of the personal
property for the purpose of distribution. They contend
that *Speed* v. *Kelly,* 59 Miss. 47, controls instead of *Jane*
v. *Martinez,* 104 Miss. 208.

As we have before attempted to show, the Martinez
case is exactly in point on the facts while the Speed case
is not. In the Speed case there was a controversy be-
tween a domicillary administrator and a stranger. Here
there is no stranger involved. Ducate, administrator, is
no stranger. He was appointed at the instance and re-
quest of nearly every party to the suit. He is an officer
of the courts of this state. The principal thing the
court was concerned with in the Speed case was as to
what actually constituted personal property. That de-
cision plainly says "personal property situated in this
state is distributable according to the laws here." Cer-
tainly, the property that the chancellor found as a fact
has a *situs* here is actually situated here. As to the
Dunbar-Ducate Company, it had its plant and its boats
here. Its officers and offices were here. It was domesti-

cated and transacted all its business here.  Its employees are here, etc.

Counsel apparently are asking the court to overrule the Martinez case.  It is controlling unless overruled and we see no reason for so doing.  It is sound; states the law clearly and concisely; and correctly interprets our statute.  We submit that the Martinez case should remain the law.

Argued orally by *W. H. White* and *L. C. Mize,* for appellants.

HOLDEN, P. J., delivered the opinion of the court.

The case involves the question of the *situs* and distribution of certain personal property of Mrs. Ola D. Warren who died intestate September 20, 1923, in the state of Minnesota, where she was domiciled.  The personal property consisted of shares of stock in different corporations located and doing business in Mississippi, and elsewhere.  The deceased left surviving her four children, the appellants, and her husband, the appellee.

One of the main questions in the case is whether or not the personal property, represented by shares of stock in corporations located and operating in the state of Mississippi, shall descend and be distributed under the laws of Mississippi, or under the laws of Minnesota.  If the distribution should be made under the laws of Minnesota the husband of the deceased would take one-third of her estate, and her four children, parties to this suit, would take the other two-thirds, to be divided between them one-sixth to each; but, if the personal property descends under the laws of Mississippi, the husband will take one-fifth of it and the four children will take the other four-fifths.

On the trial below the chancellor held that the shares of stock in the corporations located and doing business in Mississippi would descend under the laws of Missis-

sippi; that the husband of the deceased, who was adjudged a bankrupt after the death of his wife, and is represented in this case by P. A. Miller, the trustee in bankruptcy in Minnesota, would take only one-fifth of the property represented by shares of stock in Mississippi corporations, and that the four children would take the other four-fifths of the property; and from this decree the trustee in bankruptcy and the City National Bank of Duluth, Minn., present administrator of the estate of the deceased Mrs. Warren, appeal to this court. The administrator in Mississippi, E. I. Ducate, for the children, also appeals.

Mrs. Ola D. Warren was domiciled in Minnesota and there possessed the shares of stock involved in this suit at the time of her death. She had married twice; first to Wm. L. Ewing, to which marriage was born the two children, Wm. L. Ewing and Nathaniel D. Ewing, minors, and parties to this suit. After being divorced from Ewing she married the appellee Harry O. Warren, and to this marriage the two children, Harry O. Warren, Jr., and Roseann Warren, minors, who are also parties to this action, were born. So at the time of her death Mrs. Warren left as her heirs the four children just named, and her husband, Harry O. Warren.

The four children contend, through the Mississippi administrator, E. L. Ducate, that they are entitled to four-fifths of the personal property under the law of descent and distribution in Mississippi, and that the husband, Harry O. Warren, as now represented by the trustee in bankruptcy, Miller, is entitled, if to any interest, to the other one-fifth of the property because the *situs* of this personal property is in Mississippi, and is governed by the descent and distribution statute of this state.

The trustee in bankruptcy and the Minnesota administrator, the City National Bank of Duluth, contend that the personal property involved should descend and be distributed under the laws of Minnesota, because the deceased was there domiciled and had possession of the

shares of corporate stock at the time of her death, and that, therefore, the *situs* of the property was in Minnesota and not in Mississippi.

We think the holding of the chancellor that the *situs* was in this state was correct, and the distribution is controlled by the statute of descent and distribution of Mississippi. We may say at this juncture that all parties concede that shares of stock in a corporation are personal property under the laws of Mississippi. The statute referred to is in the following language: .

Section 1648 Code of 1906 (section 1380, Hemingway's Code):

"All personal property situated in this state shall descend and be distributed according to the laws of this state regulating the descent and distribution of such property, regardless of all marital rights which may have accrued in other states, and notwithstanding the domicile of the deceased may have been in another state, and whether the heirs or persons entitled to distribution be in this state or not; and the widow of such deceased person shall take her share in the personal estate according to the laws of this state."

We think the question presented was clearly decided in the case of *Jane* v. *Martinez,* 104 Miss. 208, 61 So. 177, wherein this court held that stock in a bank is personal property and has its *situs* where the bank is chartered and located, and that such property was distributable according to the laws of this state. This decision is in point and is controlling, and renders it unnecessary to further discuss the question; consequently we hold that the chancellor was correct in his decree on this proposition.

But it is contended by the Minnesota parties that some of the certificates of shares of corporate stock involved in this case represent stock in a Louisiana corporation, and that, therefore, their *situs* would not be in Mississippi, and such stock should go to the Minnesota representatives. But we think the position is not maintain-

able, because, while the corporation in question was chartered under the laws of Louisiana, it is located and doing business principally, if not wholly, within the state of Mississippi, and became domesticated under our laws, as provided by sections 915, 916 and 917, Code of 1906 (sections 4089, 4090 and 4091, Hemingway's Code). The latter section provides that—"Any corporation shall, upon compliance with this law, become to all intents and purposes a corporation of this state, and shall be entitled to all the rights and privileges and be subject to all the duties, obligations, restrictions, liabilities, limits and penalties conferred and imposed by laws of this state upon similar corporations incorporated under the laws of this state."

And therefore the *situs* of such shares for devolution purposes is in Mississippi. See *Wait* v. *Kern River Mining, etc., Co.,* 157 Cal. 16, 106 P. 98. We do not think *Rhode Island Co.* v. *Doughton,* 46 S. Ct. 256, 70 L. Ed.—, is contrary to the above view.

The finding of the chancellor that the money deposited in one of the banks of this state, belonging to the estate of the deceased, was also to be distributed under our law, because of its *situs,* was also correct.

The decree of the chancellor that the other property in controversy, located elsewhere than in Mississippi, should be turned over by E. L. Ducate, Mississippi administrator to the City National Bank of Duluth, Minn., administrator in Minnesota, to be distributed there in accordance with the laws of that state was correct, and will not be disturbed here.

The lower court held that the one-fifth interest descended to the husband of the deceased under the laws of this state was to go to Miller, the trustee in bankruptcy in Minnesota, and that, if there should be any balance remaining after the debts of the bankrupt were paid by the trustee, it should be turned over to the four children of the deceased.

The appellant, Administrator Ducate, for the four children, contends that the court erred in allowing the one-fifth interest to go to the trustee, because Warren, the husband of the deceased, had dissipated and spent a large amount of the estate before it was recovered from him by the administrators in the present proceeding, and that, since he had spent more than his one-fifth share of the personal property in Mississippi he should not be allowed to take any part of the property remaining, and therefore the trustee, who must take through Warren, should receive nothing. Warren had obtained possession of the property before he was removed as administrator.

We disagree with this view, because at the time of the death of Mrs. Warren, her husband took, by inheritance, an interest in her estate, and while he still owned the interest in the estate, and before the dissipation, he was adjudged a bankrupt, whereupon the interest of Warren immediately vested in the trustee in bankruptcy, and Warren, therefore, had no interest afterwards to dissipate, because under the law the title thereto had passed to the trustee when Warren was adjudged a bankrupt.

The conversion of the property by Warren after he was adjudged a bankrupt could not be charged against the interest of the trustee, for the reason that the dissipation of the estate by Warren was tantamount to the theft of it by an outsider, and the loss would be shared by all of the parties in interest, and the interest of the trustee would not be affected except to be proportionately reduced accordingly to the shrinkage of the estate on account of the wrongful appropriation by Warren. Therefore the chancellor was correct in his decision on this point.

The lower court was also right in holding that any balance remaining after the trustee had paid the debts of the bankrupt should be paid to the four children of deceased. This ruling was proper upon the ground that whatever balance the trustee might have belonging to

Warren should go to satisfy the personal money decree of twenty-six thousand three hundred eighty-six dollars rendered by the lower court against him for money and property of the estate wrongfully appropriated by him to his own use.

The lower court also found that the two minor Ewing children should recover the sum of five thousand dollars as a prior claim against the estate of Mrs. Warren as the value of certain diamonds which Mr. Ewing, the father of the two children, and his wife, the then Mrs. Ewing, had agreed, in writing, that Mrs. Ewing, upon the separation between her and her husband would retain until the two children became of age and then deliver them, or that if Mrs. Ewing remarried before a certain time she would turn the diamonds over to the children.

Mrs. Ewing married before the expiration of the time named in the contract, but she did not then turn the diamonds over to the children, but kept them until her death, when they were taken by Warren and wrongfully appropriated to his own use. So, when Mrs. Warren died she had the diamonds, which she should have delivered to the children, under the contract with her husband, when she remarried; and having breached the contract with her ex-husband to deliver the diamonds (which contract we here hold to be valid), she then held them in conversion at the time of her death and her estate is therefore liable for their value to the two children. The holding of the lower court on this point was correct.

The record discloses that the husband, Harry O. Warren, obtained possession of large sums of money and diamonds belonging to the estate of Mrs. Warren, which he wrongfully appropriated to his own use. The chancellor rendered a personal decree against the said Harry O. Warren on this account, for the sum of twenty-six thousand three hundred eighty-three dollars, and we see no error on the part of the chancellor in this regard.

In view of the conclusions reached above, the decree of the lower court is affirmed in all respects, and as to all parties.

*Affirmed.*

## ON SUGGESTION OF ERROR.

The suggestion of error filed herein by appellants, Paul A. Miller, trustee in bankruptcy, and the City National Bank, of Duluth, Minn., has been considered by all of the judges of this division, and we have decided to overrule it for the following reason:

None of the points presented by the suggestion of error is meritorious, except, possibly, the contention with reference to the record failing to show that the Dunbar-Ducate Company was domesticated in this state, but was a Louisiana corporation, and the stock therein was held by a resident of Minnesota at the time of her death, and that therefore the stock in this corporation should be distributed, according to the laws of Mississippi, but under the laws either of Louisiana or Minnesota, and that, consequently, our opinion in that regard is erroneous, because this corporation had not in fact been domesticated in Mississippi. This case is reported at page 601, 109 So.

In the original presentation to us of this question as to what state law should govern in the distribution of the stock, counsel for appellants, both orally and by briefs, argued the question upon the theory that the finding of fact by the chancellor that this corporation had become domesticated in this state was correct, but that the stock in the corporation should be distributed under the laws of the state of the domicile of the deceased owner, or under the laws of the state of Louisiana, where the corporation was originally chartered. We considered the question upon that state of case, and rendered our decision adverse to appellants' view, and now, after counsel has litigated the legal question upon that theory, and secured from us a decision of the point, we are met with the suggestion that there is no basis of fact in the

record as to the corporation being domesticated in this state, upon which to predicate our adjudication of the legal question.

The point now made by counsel should have been presented originally, and, reluctant as we are to refuse to consider a material point, though raised for the first time on suggestion of error, we have decided, in the present instance, it being in our discretion, to decline to consider the point now urged for reversal of the lower court. If we should now entertain the point raised by the suggestion, our decision might possibly result in overruling the suggestion upon the ground that there was a substantial compliance with the law in respect to domestication of the corporation in question, or that the filing of the charter in this state and the fact that the property of the corporation was wholly located in this state, for all practical purposes, would bring the distribution of the stock under the laws of the state of Mississippi.

However, we will not now consider the question as to whether the corporation was domesticated in this state by technical compliance with the requirements of the statutes in that regard, but shall overrule the suggestion of error for the reason mentioned.

*Overruled.*